**STATE of Indiana, DEPARTMENT OF CORRECTION, INDIANA REFORMATORY, Appellant–Petitioner,**

v.

**Larry G. FINLEY, Appellee–Respondent.**

**No. 49A05–9102–CV–58.**

Court of Appeals of Indiana,
Fifth District.

Aug. 5, 1991.

Linley E. Pearson, Atty. Gen., David A. Nowak, Deputy Atty. Gen., Indianapolis, for appellant-petitioner.

Jacquelyn Thompson, Indianapolis, for appellee-respondent.

BARTEAU, Judge.

The State of Indiana, Department of Correction and Indiana Reformatory (collectively "the State") appeal the trial court's judgment affirming the decision of the Indiana Civil Rights Commission ("Commission") awarding Larry Finley damages in the amount of $38,835.71 on his complaint for wrongful discharge as a result of racial discrimination. The sole issued raised is whether the Commission's order to the State to pay damages and to offer Finley a position as a correctional officer with the same benefits as if he had not been terminated is contrary to law.

We reverse and remand to the Commission for a proper determination of damages consistent with this opinion.

## FACTS

Finley was employed by the State as a correctional officer at the Indiana Reformatory from June 6, 1984 until October 9, 1984. The State does not appeal the portion of the trial court's judgment affirming the Commission's decision that Finley was wrongfully terminated on October 9. Finley remained unemployed until January 3,

1985 when the State hired him as a correctional officer at the Reception Diagnostic Center. Finley was fired from this position on June 6, 1985. This termination has not been challenged as being wrongful. From the date of his wrongful termination from the Reformatory to May 2, 1989, the date of the Commission hearing, Finley earned $76,974.66. Had he remained at the Reformatory for the same period his earnings would have been $115,820.37. The Commission awarded Finley the difference between those amounts.[1]

Other facts are presented below as necessary.

## STANDARD OF REVIEW

■ Judicial review of an administrative decision is limited to a determination whether the decision is arbitrary, capricious, an abuse of discretion, in violation of any statutory or legal principle, or unsupported by substantial evidence. *Indiana Civil Rights Com'n v. Midwest Steel* (1983), Ind.App., 450 N.E.2d 130. A reviewing court may not substitute its judgment for that of the administrative agency. *Id.*

## DISCUSSION

The State alleges that its liability for damages to Finley ended when it hired Finley as a correctional officer at the Reception Diagnostic Center on January 3, 1985 and thus, should only have to pay damages for the period October 9, 1984 to January 3, 1985 and should not have to offer Finley a position as a correctional officer. Ind.Code 22–9–1–6 gives the Commission the power to restore losses as a result of discriminatory treatment and provides that the discharged employee should be restored, as nearly as possible, to the same situation he would have occupied if he had not been the victim of an illegal discharge. *Midwest Steel, supra.*

1. The Commission awarded Finley $38,835.71, yet, we note that the difference between $115,-820.37 and $76,974.66 is $38,845.71. Neither party has explained the discrepancy and we assume it is a clerical mistake. In any event, it does not matter as we are remanding for a recalculation of damages.

Cases cited in the parties' briefs and our own research reveal two general approaches relevant to the issue presented here:

A) Damages are calculated as the difference between actual earnings from termination until the hearing and the earnings that would have been received in the same period absent any discrimination. Any wages from employment obtained after the discriminatory termination are treated merely as a mitigation of damages, without regard to the type of employment secured. *See e.g. Sims v. Mme. Paulette Dry Cleaners* (S.D.N.Y.1986), 638 F.Supp. 224; *Hayes v. McIntosh* (N.D.Ind.1984), 604 F.Supp. 10. Damages will be mitigated to the extent the employee actually earned wages or, in the event the employee voluntarily terminates the employment or causes the termination, damages will be mitigated to the extent of the employee's wages as if he still held the job. *See Sims, supra* (citing *Ford Motor Co. v. E.E.O.C.* (1982), 458 U.S. 219, 102 S.Ct. 3057, 73 L.Ed.2d 721 ["deductions should be made not only for actual earnings by the worker but also for losses which he willfully incurred"]).

B) The second approach scrutinizes the subsequent employment to determine whether it is (1) a mere mitigation of damages, or (2) a cut-off for the period used to determine damages. *See e.g. Ford Motor Co., supra; Midwest Steel, supra.* Subsequent employment that is better or substantially equivalent to the prior job terminates the employer's liability for discriminatory discharge or refusal to hire because the employee no longer suffers ongoing injury from discrimination. *Ford Motor Co., supra. See also Hayes, supra,* where the court stated: "[t]rue, some courts have held that full time permanent employment discharges a former employer's liability for wrongful discharge ... and that result seems warranted where the new employment is at a wage rate equal to or higher than that of the former employment." *Id.* at 20–21.

 We believe the facts and circumstances of each case dictate which approach will be appropriate. The first step

is to determine if the subsequent employment is substantially similar or better than the discharged-from employment. If so, the analysis is over and the employer's liability terminates as of the start of the subsequent employment. If not, then the subsequent employment must be treated as a mitigation of damages, and not a termination of liability.

 If the subsequent inferior employment ended prior to the discriminatory discharge hearing, another issue arises— whether the employee voluntarily left the employment or caused the termination. If the employee did nothing to cause the termination and did not voluntarily quit, only the amount actually earned from the subsequent employment will be set off in mitigation. If, however, the employee quit or caused termination, damages will be mitigated to the extent of the wages the employee would have earned if the employee retained the position until the time of the hearing. *See e.g. Sims, supra; Midwest Steel, supra.* The rationale for this is that "[s]uch employees would have no incentive to conduct themselves in such a way as to retain any position they might secure.... [T]he employer would become an insurer of the employee's salary." *Hayes, supra* at 20.

As stated above, the State urges us to follow the second approach and hold that its liability for back pay is limited to the period from October 9, 1984, when Finley was unlawfully terminated, to January 3, 1985, when Finley was hired at the Reception Diagnostic Center at the same wage rate and with the same benefits as his employment at the Reformatory. Finley argues that his employment at the Reception Diagnostic Center merely mitigates his damages to the extent of his actual earnings because the employment was inferior and he did not voluntarily leave that employment. He argues the employment was inferior because he earned more overtime wages at the Reformatory.

The Commission made no finding whether Finley's employment at the Reception Diagnostic Center was substantially similar to his employment at the Reformatory, nor

did it make a finding whether Finley caused his termination from the Center. Therefore, we cannot determine whether the Commission applied the appropriate measure of damages. If the Commission finds that Finley's employment at the Center was better than, or at least substantially similar to, his employment at the Reformatory, the State is liable only for the damages Finley incurred until January 1, 1985 and should not be ordered to offer Finley a position as a correctional officer.

■ On the other hand, if the employment at the Center was inferior, the State is liable for damages from the date of Finley's unlawful termination until the date of the hearing. In that case, the extent of mitigation will depend on whether Finley was terminated from the Center through no fault of his own. If he was, damages will be mitigated only to the extent Finley actually earned wages at the Center and any other employment. If, however, Finley caused his termination or quit, damages will be mitigated as if Finley earned wages from the Center until the time of the hearing. Likewise, only if Finley did not cause his termination at the Center would it be appropriate for the Commission to order the State to offer Finley a position as a correction officer with the same benefits as if he had not been wrongfully terminated from the Reformatory.

Accordingly, we reverse the Commission's order and remand for a determination of the damages consistent with this opinion.

REVERSED AND REMANDED.

SHARPNACK and SHIELDS, JJ., concur.