INDIANA CIVIL RIGHTS COMMIS-
SION, Alpha Blackburn as Chairman
of the Indiana Civil Rights Commis-
sion, and Carolyn Tyler, Appellants–
Respondents,

v.

WEINGART, INC., Appellee–Petitioner.

No. 02A04–9109–CV–317.[1]

Court of Appeals of Indiana,
First District.

March 23, 1992.

Jacquelyn Thompson, Indianapolis, for
appellants-respondents.

RATLIFF, Chief Judge.

## STATEMENT OF THE CASE

Carolyn Tyler appeals the setting aside
of a final order entered by the Indiana Civil
Rights Commission ("Commission") con-
cerning race discrimination in employment.
We reverse.

## ISSUES

1. Did the trial court err in finding that
the Commission's finding of pretext was
not supported by substantial evidence?

---

**1.** This case was transferred to this office by order of the Chief Judge on February 5, 1992.

2. Did the trial court err in deducting unemployment benefits from Tyler's back pay award?

## FACTS

Tyler was employed by Weingart to work on wire harnesses and assemble circuit boards in April 1983. In late June of 1983, Tyler informed her supervisors that she had biracial children and did not appreciate jokes and comments about blacks made by co-workers. On June 27, 1983, Weingart issued rules to the employees affirming its policy on equal opportunity employment. Thereafter, Tyler did not hear any racial jokes or comments but noticed that attitudes towards her had changed. Co-workers and senior technician Polk were no longer friendly and did not volunteer assistance as they had previously done.

On July 21, 1983, Bruce Haworth, Tyler's supervisor, laid off Tyler and three other employees indefinitely due to lack of work. On July 25, 1983, the other three workers were recalled to work. Haworth maintained that Tyler was not recalled because there was not enough work to recall all four and Tyler's performance was poor. He also stated that Weingart was doing more circuit board work than wire harness work, so he needed employees with more experience than Tyler on circuit boards.

Tyler filed a discrimination complaint with the Commission alleging she was laid off from Weingart and not recalled because she had biracial children. The Commission found that Weingart's layoff of Tyler and failure to recall were unlawful discriminatory practices and awarded Tyler $9,863.75 as back pay. Weingart appealed to the Allen Circuit Court. The court entered partial summary judgment in favor of Weingart deducting from the back pay award the amount of unemployment compensation Tyler had received. The trial court also reversed the Commission's decision of discrimination on the merits finding that the Commission's order was not supported by substantial evidence. The trial court entered specific findings that Tyler was not recalled because of her unsatisfactory performance and that such reason was not a pretext to exclude her from employment. Tyler appeals to this court.

## DISCUSSION AND DECISION

*Issue One*

 First, we note that because Weingart has not filed a brief in this case, Tyler need only demonstrate prima facie reversible error in order to prevail on appeal. *See State v. Costas* (1990), Ind., 552 N.E.2d 459, 461. In reviewing the Commission's order, the trial court granted relief to Weingart finding that the decision was unsupported by substantial evidence.[2] *See* IND. CODE § 4–21.5–5–14(d)(5) (court may reverse an administrative agency action if the decision is unsupported by substantial evidence); *State of Indiana v. Finley* (1991), Ind.App., 575 N.E.2d 1026, 1027. Administrative findings of fact are not reversed unless it conclusively appears the evidence upon which the decision was made was devoid of probative value or so proportionately inadequate that the finding could not rest on a rational basis. *May v. Department of Natural Resources* (1991), Ind.App., 565 N.E.2d 367, 372. If a reasonable person would conclude that the evidence and the logical and reasonable inferences therefrom are of such a substantial character and probative value so as to support the administrative determination, then the substantial evidence standard of I.C. § 4–21.5–5–14(d)(5) is met. *Fire Prevention v. Rose Acre Farms, Inc.* (1988), Ind. App., 530 N.E.2d 131, 133, *trans. denied.* We do not reweigh conflicting evidence or judge the credibility of witnesses. *May,* 565 N.E.2d at 372.

Tyler had the burden of proving a prima facie case of racial discrimination. Once a prima facie case is established, the burden shifts to the employer to articulate a legitimate nondiscriminatory reason for the employee's rejection. If the employer over-

---

2. As required by IND. CODE § 4–21.5–5–14(c), the trial court entered findings of fact and conclusions of law.

comes this burden, the employee must then prove by a preponderance of the evidence that the legitimate reasons offered by the employer were not its true reasons, but were a pretext for discrimination. *See Indiana Civil Rights Commission v. City of Muncie* (1984), Ind.App., 459 N.E.2d 411, 418–19, *trans. denied* (citing *McDonnell Douglas Corp. v. Green* (1973), 411 U.S. 792, 807, 93 S.Ct. 1817, 1826–27, 36 L.Ed.2d 668, 680).

■ The Commission entered conclusions stating that Tyler met her burden of providing a prima facie case as to both the layoff and the failure to recall. Record at 1122. The Commission further concluded that Weingart met its burden of introducing evidence of a legitimate business reason for its actions. *Id.* The Commission held that the reasons asserted by Weingart were proven by Tyler to be pretexts unworthy of credence; therefore, the Commission determined that Weingart's actions were unlawful discriminatory practices. *Id.*

Contrary to the trial court, we find that the Commission's decision is supported by substantial evidence of probative value. Tyler presented a prima facie case of racial discrimination. She complained to her supervisor about derogatory racial remarks since she had biracial children and did not appreciate the jokes and comments. Thereafter, she noticed a change in the other workers' attitudes towards her. Then she was laid off from her job due to a lack of work even though business orders increased the very next day. Moreover, she was not recalled to work although three co-workers resumed work the next week.

Weingart then rebutted Tyler's prima facie case by meeting its burden of providing legitimate business reasons for laying off Tyler and not recalling her to work. First, Haworth introduced evidence that Tyler was laid off due to the lack of work and was not recalled because she exhibited poor performance on circuit boards and no wire harness work was expected.

Next, Tyler proved that Weingart's reasons were pretexts for its discriminatory practices. Tyler presented evidence that layoffs were rare and that instead, workers would voluntarily work fewer hours when the workload was low. Tyler also testified that shortly before she was laid off, she had been told to expect a lot of overtime. Record at 877. The day after Tyler was laid off, Weingart received several work orders from Delco. Record at 813. The other three workers who were laid off with Tyler were recalled the following Monday. Record at 878. Tyler's rate of errors was no worse than that of one of the workers who was recalled and that worker had previously been suspended for poor performance. Record at 268. Further evidence was presented that Weingart hired two new employees in August to do circuit board work, which employees had less experience on circuit board work than Tyler, contrary to Haworth's statements regarding the new employees' abilities. Record at 219–20, 764–65, and 775. It was within the province of the Commission to judge the credibility of the witnesses, and a reviewing court may not substitute its judgment for that of the administrative agency. *Finley*, 575 N.E.2d at 1027. We find that the evidence is sufficient to support the Commission's determination of discrimination and that the trial court erroneously substituted its judgment for that of the Commission.

*Issue Two*

■ Tyler also claims that the trial court erred in holding the amount of unemployment compensation she received was deductible from the back pay award of the Commission. The trial court entered summary judgment on this issue, reducing the back pay award by the amount of unemployment compensation.

A claimant is required to repay to the State any unemployment compensation she received which was paid for the same period for which she received a back pay award. IND. CODE § 22–4–13–1(b); *see Frost v. Review Board of Indiana Employment Security Division* (1982), Ind. App., 432 N.E.2d 459, 461 (State recouped unemployment benefits which covered period of unemployment for which claimant received a back pay award); *Smith v. Review Board of Indiana Employment Se-*

*curity Division* (1981), Ind.App., 428 N.E.2d 88, 89–91 (employee required to re-pay unemployment benefits to State when payment of benefits coincided with time for which employee was awarded back pay from her employer). The trial court's fear of double recovery by Tyler is alleviated by I.C. § 22–4–13–1.[3] Allowing the employer to deduct the amount of unemployment benefits from the back pay award would have the effect of a double deduction. We find the trial court erred in reducing the back pay award by the amount of unemployment compensation.

Reversed and remanded.

CONOVER, J., concurs.

SULLIVAN, J., concurs in result as to Issue I, concurs as to Issue II.

---

**3.** Despite the trial court's reliance upon *Bowe v. Colgate–Palmolive Co.* (7th Cir.1969), 416 F.2d 711, 721, *cert. denied,* which declared the deduction of unemployment benefits from the back pay award was a valid exercise of the trial court's discretion in a federal case, our legislature has established a statutory means to avoid double recovery in Indiana by its enactment of I.C. § 22–4–13–1.