**WHIRLPOOL CORPORATION,**
**Appellant–Petitioner,**

v.

**VANDERBURGH COUNTY–CITY OF EVANSVILLE HUMAN RELATIONS COMMISSION and Harriett Layne,**
**Appellees–Respondents.**

No. 82A04–0703–CV–165.

Court of Appeals of Indiana.

Nov. 5, 2007.

Todd M. Nierman, Dustin D. Stohler, Indianapolis, IN, Attorneys for Appellant.

Kevin W. Winternheimer, Evansville, IN, Denise K. Larue, Meghan U. Lehner, Indianapolis, IN, Attorneys for Appellees.

## OPINION

RILEY, Judge.

### STATEMENT OF THE CASE

Appellant–Petitioner, Whirlpool Corporation (Whirlpool), appeals the trial court's Final Order affirming a decision by Appellee–Respondent, Vanderburgh County–City of Evansville Human Relations Commission (the Commission), concluding that Whirlpool discharged and refused to reinstate employment of Appellee–Respondent, Harriett Layne (Layne), in retaliation for Layne filing a discrimination charge against Whirlpool.

We affirm.

### ISSUE

Whirlpool raises two issues on appeal, which we restate as the following single issue: Whether the Commission's decision was supported by substantial evidence and in accordance with the law.

### FACTS AND PROCEDURAL HISTORY

On April 6, 1992, Whirlpool hired Layne, an African American female, to be an hourly assembly worker at its facility in Evansville, Indiana. Hourly employees at Whirlpool's Evansville facility are represented by the International Union of Electronic, Electrical, Salaried, Machine and Furniture Workers Union, Local 808 (Local Union 808). Beginning in February 2000, Layne worked the first shift, from 6:30 a.m. to 3:00 p.m., in the facility's 50–pound icemaker department. Layne was supervised by two Caucasians.

On June 13, 2000, Whirlpool suspended Layne for an alleged violation of Shop Rule 10, which prohibits "leaving [the employee's] department or the plant during working hours without permission." (Appellant's App. p. 0011). That day, Layne left the premises and went to lunch with

co-worker, Ron Darrett (Darrett), also African American. After returning from lunch, Layne and Darrett were each called into a supervisor's office and suspended for three days for violating Shop Rule 10. This was Layne's first disciplinary action in her eight years of employment with Whirlpool. On July 4, 2000, as a result of being suspended, Layne filed a complaint of race discrimination, "Charge No. 00–68," with the Commission. (Appellant's App. p. 0011).

On November 2, 2000, Layne's daughter was ill and stayed home from school. The next morning, around 5:00 a.m., Layne took her daughter to the emergency room at St. Mary's Hospital, but did not obtain medical services for her due to financial reasons. Layne left the emergency room and took her daughter home. Layne arrived to work at 7:30 a.m., one hour late. Earlier that morning, prior to the start of her shift, Layne had called Whirlpool and advised that she would be late. Also, upon arriving at work, Layne advised a supervisor that her daughter was ill.

Later that day, during a break, Layne called the Welborn Clinic and spoke to a nurse, Jo Casey (Casey). Layne informed Casey that her daughter had been ill for the last two days and requested the doctor call in a prescription. Thereafter, Casey called Layne back at work and stated that the doctor would have to see her daughter before prescribing any medicine. Layne scheduled an appointment at the Clinic for her daughter at 3:30 p.m. Casey then faxed Whirlpool a doctor's statement indicating Layne's daughter was ill and had an appointment with the doctor that afternoon. However, Layne did not take her daughter to the doctor that afternoon because by the time she got home from work, she and her daughter were late for the appointment and her daughter reported she was feeling better. Layne then began

a one-week pre-approved vacation from Whirlpool.

On November 7, 2000, Casey faxed to Whirlpool a letter indicating that Layne did not bring her daughter to the scheduled appointment. On November 13, 2000, when Layne returned from vacation, her supervisor suspended her, pending termination, for allegedly violating Shop Rule 1, which prohibits "[f]alsification of personnel or any other Company records." (Appellant's App. 0011). On November 15, 2000, Layne participated in a fact-finding meeting. On November 17, 2000, she was terminated. Thus, during the pendency of Layne's discrimination charge, Charge No. 0068, Whirlpool discharged Layne.

Following her discharge, Layne filed a grievance with Local Union 808, which remained pending until December 19, 2001 when a grievance settlement hearing was held and Whirlpool declined to reinstate Layne's employment. Consequently, on January 15, 2002, Layne filed her second charge of discrimination with the Commission, "Charge No. 02–01," alleging retaliatory discharge. (Appellant's App. p. 0012).

On December 8, 2005, the Commission conducted a public hearing to address allegations of discrimination by Layne against Whirlpool. On April 4, 2006, the Commission entered its Findings of Fact, Conclusions of Law, and Final Order on the matter, stating in pertinent part:

### FINDINGS OF FACT

\* \* \*

29. The preponderance of evidence supports a finding that Layne was not reinstated because she had engaged in protected activity—the filing of her first charge of discrimination with [the Commission].

   a. Layne had only filed her charge of discrimination four months prior

to her termination. Additionally, the investigation of that charge was still ongoing at the time Whirlpool determined that it would not reinstate her employment. This proximity in time supports a conclusion that these events were causally related.

b. There is insufficient evidence that Layne falsified any company record or document as charged by Whirlpool. Layne did not write the medical statement nor did she submit the document to Whirlpool. Further, none of the information contained in the medical statement was proven to be false. The undisputed evidence is that on November 3rd Layne's daughter was sick and Layne did have a doctor's appointment for her daughter for later that afternoon. Layne produced a school record that showed her daughter stayed home from school due to illness on November 2nd and 3rd.

c. There was evidence of other similarly situated employees who were discharged for violation of Shop Rule 1 but were subsequently reinstated by Whirlpool [ ].

\* \* \*

30. There was no evidence presented during the hearing that, subsequent to her discharge from Whirlpool, Layne failed to take reasonable steps to mitigate her damages by either failing to apply for a job she could have gotten or that she turned down a job that was offered to her.

31 As a result of Whirlpool's discriminatory practice concerning Layne's termination of employment on November 17, 2000 through the date of the hearing, December 8, 2005, Layne lost wages in the amount of $113,137.34 ($157,224.80 less mitigation income $44,087.46).

[32.] Layne further testified that she had every intention of continuing her employment with Whirlpool until retirement and seeks reinstatement.

\* \* \*

## CONCLUSIONS OF LAW

\* \* \*

5. A "discriminatory practice" as defined in Municipal Code Section 3.30.138(B)(9) consists of in relevant part:

a. The exclusion from or the difference in treatment or the failure to grant any person equal opportunities by reason of race, religion, color, sex, national origin, ancestry, or handicap[ . . .;] or

b. The exclusion from, the difference in treatment of, or the failure to grant to any person equal opportunities because that person did one or more of the following:

(1) Filed a complaint alleging the violation of this subchapter.

\* \* \*

7. Layne failed to establish by a preponderance of the evidence that she was suspended on June 13, 2000 because of her race.

8. Layne established by a preponderance of the evidence a *prima facie* case that Whirlpool committed a discriminatory practice based on retaliation when it terminated her employment on November 17, 2000, and then subsequently refused to reinstate her on December 19, 2001, based on the following:

a. Layne had engaged in protected activity, namely she had previously filed a charge of discrimination against Whirlpool. This charge

was still under investigation when Layne was discharged on November 17[, 2000] and was still pending at the time of the employer-union grievance settlement. meeting on December 17, 2001.

b. Layne suffered an adverse employment action when Whirlpool terminated her employment and then subsequently refused to reinstate Layne's employment on December 17, 2001.

c. The evidence supports a conclusion that the protected activity and the adverse action are causally related.

9. Whirlpool's stated reason for refusing to reinstate Layne's employment is pretextual because:

a. Evidence supports a finding that Whirlpool evidenced a retaliatory animus toward Layne.

b. Evidence supports a finding that Layne's filing of [Charge 00–68] and the adverse employment action-termination [-] and then the refusal to reinstate were not wholly unrelated.

c. The reason for discharging Layne is factually baseless. There was insufficient evidence introduced to substantiate that Layne falsified any document as charged by Whirlpool.

d. There is evidence of other similarly situated employees who were discharged for violation of Shop Rule 1[,] but were subsequently reinstated by Whirlpool Management .... those employees, unlike Layne, had never previously engaged in protected activity—the filing of a charge of discrimination.

10. The evidence of Layne's *prima facie* retaliation case coupled with a finding that the reason advanced by Whirlpool for not reinstating Layne's employment is pretextual supports a conclusion based on the preponderance of evidence that Whirlpool engaged in an unlawful discriminatory practice based on retaliation when it terminated Layne and then subsequently refused to reinstate Layne's employment.

(Appellant's App. pp. 0012–14). Ultimately, the Commission determined that Layne is entitled to both reinstatement and reimbursement for lost wages.

Thereafter, Whirlpool appealed the Commission's decision to the Vanderburgh Circuit Court (trial court). On November 21, 2006, the trial court held a hearing. On February 15, 2007, the trial court entered Findings of Fact and Conclusions of Law, stating in pertinent part:

CONCLUSIONS OF LAW

1. This court has jurisdiction of the parties and matters at issue herein.

2. [Whirlpool] timely filed an appeal of the decision of [the Commission] under authority of [Ind.Code § 4–21.5], the same as if it was a decision of a state agency.

3. [The Commission] operates under authority of Municipal Code of Evansville (MCE) 3.30.138 under authority of I.C. [§ ] 22–9–1–12.1.

4. I.C. [§ ] 4–21.5–5–11 provides that a court may not try the cause *de novo* or substitute its judgment for that of the agency.

5. "Deference is to be given by the reviewing court to the expertise of an administrative body, and the administrative body's decision should be reversed only if it is (1) arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law, (2) contrary to a constitutional

right, power, privilege, or immunity, (3) in excess of statutory jurisdiction, authority, or limitations, or short of statutory right, (4) without observance of procedure required by law, or (5) unsupported by substantial evidence." [*Indiana Dept. of Environmental Management v. Adapto*, 717 N.E.2d 646, 649 (Ind.Ct. App.1999) ].

6. "An administrative agency's action is arbitrary and capricious only where there is no reasonable basis for the action." [*Adapto*, 717 N.E.2d at 649].

7. "The challenging party has the burden of proving that an administrative action was arbitrary and capricious." [*Adapto*, 717 N.E.2d at 649].

8. A reviewing court should neither substitute its judgment on factual matters for that of an administrative agency, nor reweigh the evidence; rather, the evidence is considered in the light most favorable to the administrative proceedings, and the agency's action will not be disturbed so long as there is substantial evidence to support the determination. [*Adapto*, 717 N.E.2d at 649].

9. Under the law, this court must defer to the findings of fact of [the Commission], and may not overturn its conclusions merely because the court may have drawn different conclusions. [*State Family and Soc. Serv. Admin. v. Carmel Healthcare Management, Inc.*, 660 N.E.2d 1379, 1384 (Ind.Ct.App.1996), *trans. denied* ]. The decision of [the Commission] cannot be disturbed so long as there is substantial evidence to support its determination. "Substantial evidence" is defined as "more than a scintilla, but something less than a preponderance of the evidence." *Id.* This [c]ourt finds and concludes that the evidence supporting the finding and conclusions of [the Commission] was less than a preponderance but more than a scintilla. Consequently, substantial evidence was present and the decision of [the Commission] was entered in accordance with the requirements of law.

IT IS THEREFORE, CONSIDERED, ORDERED, ADJUDGED AND DECREED that the decision of [the Commission] is affirmed in all respects.
(Appellant's App. pp. 0007–0009).

Whirlpool now appeals. Additional facts will be provided as necessary.

## DISCUSSION AND DECISION

Whirlpool contends Layne did not present substantial evidence it terminated her employment or refused to reinstate her employment in retaliation for her filing a discrimination charge. Initially, we note the parties dispute the applicable standard of review in this case. However, to better understand the parties' arguments regarding the standard of review, we begin our discussion with an appraisal of the law pertaining to retaliatory discharge claims.

### I. Retaliatory Discharge

Generally, Indiana follows the employment at will doctrine, which permits both the employer and employee to terminate the employment at any time for "good reason, bad reason, or no reason at all." *Meyers v. Meyers*, 861 N.E.2d 704, 706 (Ind.2007) (quoting *Montgomery v. Bd. of Trustees of Purdue Univ.*, 849 N.E.2d 1120, 1128 (Ind.2006)). On rare occasions, narrow exceptions have been found. *Meyers*, 861 N.E.2d at 706. Over time, theories of retaliation, like the one asserted by Layne in the case before us, have come to be included within these exceptions. Such retaliation theories were first recognized in

Indiana in *Frampton v. Cent. Indiana Gas Co.*, 260 Ind. 249, 297 N.E.2d 425 (Ind. 1973), where our supreme court held: "[U]nder ordinary circumstances, an employee at will may be discharged without cause. However, when an employee is discharged solely for exercising a statutorily conferred right[,] an exception to the general rule must be recognized." *M.C. Welding and Machining Co. v. Kotwa*, 845 N.E.2d 188, 192 (Ind.Ct.App.2006) (quoting *Frampton*, 297 N.E.2d at 428).[1]

■ To succeed on a claim for retaliatory discharge, a plaintiff must demonstrate that his or her discharge was solely in retaliation for the exercise of a statutory right. *Purdy v. Wright Tree Service, Inc.*, 835 N.E.2d 209, 212 (Ind.Ct.App.2005), *trans. denied.* We have previously explained that the word "solely" means only that any and all reasons for the discharge must be unlawful to sustain the claim for retaliatory discharge. *Id.* Accordingly, the employee must present evidence that directly or indirectly supplies the necessary inference of causation between the filing of a claim and the termination, such as proximity in time or evidence that the employer's asserted lawful reason for discharge is a pretext. *Powdertech, Inc. v. Joganic*, 776 N.E.2d 1251, 1262 (Ind.Ct.App.2002). An employee can prove pretext by showing that: (1) the employer's stated reason has no basis in fact; (2) although based on fact, the stated reasons was not the actual reason for discharge; or (3) the stated reason was insufficient to warrant the discharge. *Id.*

In *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973), the United States Supreme Court laid out an analytical framework that allocates each party's burden of persuasion in employment discrimination actions. *Ind. Dept. of Envtl. Mgmt. v. West*, 838 N.E.2d 408, 413 (Ind.2005). Based on this framework, we have outlined the three steps of a retaliatory discharge claim as follows: (1) the employee must prove, by a preponderance of the evidence, a *prima facie* case of discrimination; (2) the burden then shifts to the employer to articulate a legitimate, non-discriminatory reason for the discharge; (3) finally, if the employer carries that burden, the employee can prove, by a preponderance of the evidence, that the reason offered by the employer is a pretext. *Purdy*, 835 N.E.2d at 213.

■ To meet the burden of establishing a *prima facie* case of discrimination, a plaintiff must show he or she: (1) was a member of a protected class; (2) was performing his or her job to the employer's expectations; (3) suffered an adverse employment action; and (4) the employer treated similarly situated persons not in the protected class more favorably. *Ind. Dept. of Natural Resources, Law Enforcement Div. v. Cobb*, 832 N.E.2d 585, 591 (Ind.Ct.App.2005), *trans. denied.*

## II. *Standard of Review*

We now address the disagreement between Whirlpool and Layne as to the applicable standard of review in this case.

---

1. Specifically, *Frampton* concerned retaliation for filing a claim pursuant to the Indiana Workmen's Compensation Act. The *Frampton* court concluded that "an employee who alleges he or she was discharged in retaliation for filing a claim pursuant to the Indiana Workmen's Compensation Act ... or the Indiana Workmen's Occupational Diseases Act ... has stated a claim upon which relief can be granted." *Frampton*, 297 N.E.2d at 428. One of the reasons for the *Frampton* rule is to prevent the employer from terminating the employment of one employee in a manner that sends a message to other employees that they will lose their job if they exercise a similar, statutory right. *Powdertech, Inc. v. Joganic*, 776 N.E.2d 1251, 1261 (Ind.Ct.App.2002).

Whirlpool urges this court to retrace the *McDonnell Douglas* burden-shifting steps outlined above to determine whether Layne presented a *prima facie* case of retaliatory discharge; meanwhile, Layne argues that after a full hearing on the merits is held, the relevant inquiry is to examine the totality of the evidence and determine whether there is sufficient evidence to support the Commission's decision. Our examination of the case law on this issue leads us to conclude that both parties are correct—to an extent. Let us explain.

Layne relies on the Seventh Circuit's repeated holding that after a full trial, the only pertinent question is whether there was enough evidence to permit the factfinder to consider the ultimate questions of discrimination and retaliation. *See Harvey v. Office of Banks and Real Estate,* 377 F.3d 698, 708 (7th Cir.2004); *see also Hall v. Gary Cmty. Sch. Corp.,* 298 F.3d 672, 675 (7th Cir.2002); *Millbrook v. IBP, Inc.,* 280 F.3d 1169, 1174 (7th Cir.2002), *cert. denied.* Further, the Seventh Circuit has stated, "[judicial review] is not ... an occasion for the court to march back through the intermediary burden-shifting steps established by *McDonnell Douglas.* We instead look to the totality of the evidence to determine whether the plaintiffs presented sufficient evidence to support the [factfinder's] determinations...." *Id.* However, the context of each of these cases was judicial review following a jury trial, rather than review of an agency's decision. Thus, before addressing Whirlpool's alternative argument, we look to our well-settled standard of review for decisions made by administrative agencies.

▆▆▆ When reviewing the decision of an administrative agency, this court stands in the same position as the trial court. *Amoco Oil Co., Whiting Refinery v. Commissioner of Labor,* 726 N.E.2d 869, 872

(Ind.Ct.App.2000). We may grant relief only upon finding that the agency's action is: (1) arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law; (2) contrary to constitutional right, privilege, or immunity; (3) in excess of statutory jurisdiction, authority, or limitations, or short of statutory right; (4) without observance of procedure required by law; or (5) unsupported by substantial evidence. Ind.Code § 4–21.5–5–14. We may not substitute our judgment on factual matters for that of the agency and are bound by the agency's findings of fact if they are supported by substantial evidence. *Cobb,* 832 N.E.2d at 590 (Ind.Ct. App.2005).

▆▆▆ The trial court proceeding is not intended to be a trial *de novo,* but rather the court simply analyzes the record as a whole to determine whether the administrative findings are supported by substantial evidence. *Amoco Oil Co.,* 726 N.E.2d at 872. Furthermore, courts that review administrative determinations, at both the trial and appellate level, review the record in the light most favorable to the administrative proceedings and are prohibited from reweighing the evidence or judging the credibility of witnesses. *Id.* at 873. While reviewing courts must accept the agency's findings of fact if supported by substantial evidence, no such deference need be accorded an agency's conclusions of law, as the law is the province of the judiciary. *Id.*

As previously stated, Whirlpool contends that upon review we must re-apply the *McDonnell Douglas* burden-shifting analysis. However, as with Layne, we find Whirlpool improperly relies on case law, specifically the following three cases: *Ind. Civil Rights Com'n v. Culver Educ. Found. (Culver Military Academy),* 535 N.E.2d 112 (Ind.1989); *Ind. Civil Rights Com'n v. Weingart, Inc.,* 588 N.E.2d 1288

(Ind.Ct.App.1992); and *Ind. Dept. of Environmental Management v. West,* 838 N.E.2d 408 (Ind.2005). In each of these cases, it is our conclusion that the reviewing court adhered to the aforementioned, and proper, standard of review for agency decisions. In *Culver,* our supreme court found that the Civil Rights Commission misapplied the law by erroneously placing the burden of proof upon the employer to prove that retaliation played no part in the decision to terminate the employee; thus, the agency's actions were not in accordance with law. *Culver,* 535 N.E.2d at 116; *see also* I.C. § 4–21.5–5–14. In *Weingart,* the trial court reversed the Civil Rights Commission's determination that the employee had proven retaliatory discharge; subsequently, we reversed the trial court based on our conclusion that the Civil Rights Commission's decision was supported by substantial evidence. *Weingart,* 588 N.E.2d at 1290. Most recently, in *West,* our supreme court acknowledged that review of an agency's determination is limited to a consideration of whether there is substantial evidence to support its decision; at the same time, the court noted that it is "free to resolve any legal questions that arise from the agency's decision . . . and are not bound by its interpretation of the law." *West,* 838 N.E.2d at 415. The *West* court then reviewed the record and concluded there was *no* evidence to satisfy the fourth prong of the *McDonnell Douglas* analysis, *i.e.* no evidence that the employer acted under a pretext. *Id.* at 413, 415 (emphasis added).

■ Based on this discussion, we conclude the standard of review Whirlpool asserts is proper only to the extent that this court (1) can point out legal errors in the application of the *McDonnell Douglas* burden-shifting method, and (2) can examine the record for substantial evidence of each prong of the analysis. However, our ultimate review in this case is restricted to determining whether there is substantial evidence to support the Commission's decision, primarily whether its decision was arbitrary, capricious, an abuse of discretion, or in excess of its statutory authority. *See id.* at 415.

### III. *Whirlpool's Arguments on Appeal*

Whirlpool's appeal is divided into two separate contentions, specifically that (1) there is not substantial evidence to support the Commission's determination that Whirlpool discharged Layne in retaliation for her filing a claim of discrimination, and (2) there is not substantial evidence to support the Commission's determination that Whirlpool refused to reinstate Layne's employment in retaliation for her filing a claim of discrimination. However, from our review of the record, we believe Whirlpool's statement of the issues confuses the Commission's Conclusions.

Particularly, in distinguishing the two employment actions—termination and refusal to reinstate—Whirlpool is unnecessarily asking Layne to prove retaliation twice. We find such proof unnecessary in light of the Commission's Conclusion of Law that "Layne established by a preponderance of the evidence a *prima facie* case that Whirlpool committed a discriminatory practice based on retaliation when it terminated her employment . . . *and then subsequently refused to reinstate her. . . .* " (Appellant's App. p. 15) (emphasis added). Further, the Commission goes on to conclude the "[e]vidence supports a finding that Layne's filing of [a discrimination claim] and the adverse employment action-termination *and then* the refusal to reinstate [-] were not wholly unrelated." (Appellant's App. p. 15) (emphasis added). Therefore, it is our conclusion the Commission observed Whirlpool's conduct in whole as retaliatory.

■ Even approaching Whirlpool's first argument in the manner it is presented, *i.e.,* that Whirlpool's termination of Layne, by itself, was not in retaliation for her filing a discrimination complaint, we find substantial evidence to support a conclusion otherwise. An employee claiming retaliatory discharge must present evidence that directly or indirectly supplies the necessary inference of causation between the protected activity and termination, such as proximity in time or evidence that the employer's asserted lawful reason for discharge is a pretext. *Powdertech,* 776 N.E.2d at 1262. Here, Whirlpool's primary sub-argument is that Layne did not establish a *prima facie* case that she was *terminated* in retaliation for her filing a discrimination complaint because the record contains no evidence it treated other employees who violated Shop Rule 1 and did not file such complaints any differently than it treated Layne. (emphasis added).

■ Specifically, Whirlpool claims that all employees who violated Shop Rule 1 were terminated, thereby assuming Layne did in fact violate Shop Rule 1. However, in its Findings of Fact, the Commission stated it found "insufficient evidence that Layne falsified any company record or document." We agree. We review factual conclusions derived from basic facts for reasonableness. *See Cobb,* 832 N.E.2d at 590. In our view, it was reasonable for the Commission to determine that Layne did not falsify any documents. The evidence shows that not only did the nurse from the Welborn Clinic fax a statement to Whirlpool that was true at the time, as Layne's daughter did have a scheduled appointment with the doctor, but the same nurse later faxed a correction statement when Layne did not bring her daughter to the appointment. Thus, the evidence supports a reasonable conclusion that Layne neither created nor submitted any false documents to Whirlpool. Therefore, in light of evidence that Whirlpool's stated reason for terminating Layne has no basis in fact, the record supports the conclusion that Whirlpool discharged Layne under the pretext she violated Shop Rule 1. Accordingly, Layne engaged in a protected activity and was treated differently than similarly situated employees, *i.e.,* other employees who did not violate Shop Rule 1, but did not file any claim of discrimination against Whirlpool.

Additionally, even if we include Layne in the similarly situated class of employees who did in fact violate Shop Rule 1 and were terminated, the record reveals that at least two of those terminated employees were reinstated following the grievance settlement hearing held between the corporation and Local Union 808 in December 2001. The record further indicates these previously terminated employees had no pending charges of discrimination against Whirlpool. Consequently, under either version of the facts, the record contains substantial evidence that Layne was treated less favorably than her cohorts who had not filed a charge of discrimination; thus, we believe the record supports a conclusion Whirlpool engaged in retaliatory conduct.

Finally, we move on to address Whirlpool's additional allegation that an act of retaliation cannot be proven solely by they closeness in time of Layne's filing a discrimination complaint and its termination of Layne.

## IV. *Timing*

■ Whirlpool asserts the four-month time period between Layne's filing of a discrimination charge and her termination does not establish retaliation as a matter of law. We agree; however, we disagree with Whirlpool's insinuation that the time lapse is fatal to Layne's claim. *See Mark-*

ley Enterprises, Inc. v. Grover, 716 N.E.2d 559, 565 (Ind.Ct.App.1999). In *Markley,* we concluded a six-month time lapse was sufficient in light of other evidence that called into doubt the employer's reasons for discharge. *See id.* Similarly, in this case, the Commission only partially relied on the four-month delay in concluding Whirlpool discharged Layne in retaliation for filing a charge of discrimination. Accordingly, because the evidence shows the Commission relied on additional evidence, specifically evidence of a pretextual discharge, Whirlpool's argument fails here as well.

### V. *Whirlpool's Responsibility v. Local Union 808*

▮ Lastly, we consider whether Whirlpool's contention that the Union bears all responsibility for refusing to reinstate Layne's employment has any merit. Specifically, Whirlpool points to evidence in the record indicating it has no power to determine which grievances the Union chooses to arbitrate. However, our review of the record leads us to conclude otherwise. The record reveals that Whirlpool supervisors and human resources personnel participate in the grievance settlement committee meetings. The meetings are actually comprised of representatives from both the Corporation and Local Union 808, and hold the purpose of resolving personnel issues. In Layne's case, the record indicates among other Whirlpool representatives, Joe West, Supervisor of Employee Relations, and Debby Castrale (Castrale), Manager of Salaried Employees and Employee Relations, were present at the grievance settlement committee meeting in which Layne's termination was discussed. At the Commission's hearing, Castrale testified that the Whirlpool representatives decide, to an extent, which terminated employees they would feel "comfortable [bringing] back" before they even agree to

meet with Union representatives. (Appellant's App. p. 400). Therefore, while Whirlpool may not be held accountable for the Union's decision to not arbitrate Layne's case, Whirlpool cannot place the entirety of the decision to not reinstate Layne's employment on the Union's shoulders. Thus, Whirlpool's argument once again fails.

### CONCLUSION

Based on the foregoing, we conclude the record contains substantial evidence in support of the Commission's decision that Whirlpool terminated and refused to reinstate Layne's employment in retaliation for her filing a discrimination charge against Whirlpool.

Affirmed.

NAJAM, J., and BARNES, J., concur.