

**FILED**

Feb 20 2018, 7:51 am

**CLERK**
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEYS FOR APPELLANTS

Ralph W. Staples, Jr.
Indianapolis, Indiana

Matthew M. Kubacki
Indianapolis, Indiana

ATTORNEYS FOR APPELLEE

Curtis T. Hill, Jr.
Attorney General of Indiana

Andrea E. Rahman
Deputy Attorney General
Indianapolis, Indiana

## IN THE
# COURT OF APPEALS OF INDIANA

255 Morris, LLC, *et al.*,

*Appellants-Petitioners,*

v.

Indiana Alcohol and Tobacco Commission,

*Appellee-Respondent.*

February 20, 2018

Court of Appeals Case No.
49A02-1701-MI-193

Appeal from the Marion Superior Court

The Honorable James A. Joven, Judge

Trial Court Cause No.
49D13-1604-MI-13760

**Riley, Judge.**

# STATEMENT OF THE CASE

Appellants-Petitioners, 255 Morris LLC d/b/a Lenny's Gentlemen's Club, and Jeffrey Moe (Moe) (collectively, Appellants), appeal the trial court's denial of their petition for judicial review of the Appellee-Respondent, Indiana Alcohol and Tobacco Commission's (Commission), decision denying Moe's renewal of a liquor license.

We affirm.

# ISSUE

Appellants present us with one issue on appeal, which we restate as: Whether substantial evidence supported the Commission's decision to deny a renewal of Moe's license because the licensed premises had become a public nuisance pursuant to 905 IAC 1-27-2.

# FACTS AND PROCEDURAL HISTORY

In February 2012, Moe purchased the real property located at 255 West Morris Street in Indianapolis, Indiana. Located on the property was Lenny's Gentlemen's Club (Lenny's), a "Tavern operating as an Adult Cabaret," which had operated at that venue for at least forty years. (Appellant's Amended App. Vol. II, p. 133). Although Moe had initially purchased the property as an investment opportunity, approximately one month later, Moe incorporated 255 Morris, LLC and "took over operations [at Lenny's] when he saw there were illegal activities." (Appellant's Amended App. Vol. II, p. 133). In late 2014 or

early 2015, Moe applied for renewal of Lenny's permit to serve beer, wine, and liquor.

[5] On March 16, 2015, the Alcoholic Beverage Board of Marion County (Local Board) conducted a hearing on Moe's request for renewal. During the hearing, Moe presented evidence that since he took over Lenny's, he has added more than fifty security cameras and hired security personnel to secure the premises. After instituting a "zero tolerance policy on drugs," he barred "over fifty customers" and now searches the bags of every dancer and bartender. (Appellant's Amended App. Vol. II, p. 155). He testified that after purchasing Lenny's, he reached out to the local Pastor and attended neighborhood meetings. Several remonstrators to the request for renewal appeared at the hearing and presented evidence in opposition. As part of their evidence, a video recording was introduced, showing people loitering and drinking in the parking lot outside the establishment in the early hours of the morning, public urination, a person firing a weapon in the air, and bullet holes in the back of a neighbor's garage. Officer David Hoffman, the District Commander of the Southwest District (Officer Hoffman), stated that while Moe's "investment in security and in personnel [is] admirable, it is still spilling out into the neighborhood." (Appellant's Amended App. Vol. II, p. 176). Characterizing Lenny's as "a hot spot for sure[,]" the officer concluded that the "business, the way it's effecting [sic] the neighborhood right now is very negative." (Appellant's Amended App. Vol. II, p. 177). At the conclusion of the hearing, the Local Board denied the renewal of the permit. Moe appealed the decision.

[6] On October 22, 2015, the Alcohol and Tobacco Commission conducted a hearing on Moe's appeal of the Local Board's decision. During the hearing, Moe presented evidence that there had been no police runs to Lenny's in the past six months. He explained that he had fired security guards for "fraternization with the independent contract dancers" and had hired new security guards who escort all patrons leaving the premises to their vehicles to ensure there is no loitering in the parking lot. (Appellant's Amended App. Vol. IV, p. 22). Officer William Carter, the nuisance abatement sergeant for Indianapolis Metropolitan Police District (Officer Carter), affirmed that after a spike in numbers for police runs in 2013, the numbers decreased "dramatically" in 2014 and continued this trend in 2015. (Appellant's Amended App. Vol. IV, p. 54). However, Officer Carter cautioned that while the number of police runs trended downwards, it is the "seriousness of the runs" that should be taken into account—"[s]hots fired, [d]isturbance, [t]hings like that." (Appellant's Amended App. Vol. IV, p. 58). Again, several remonstrators presented evidence opposing the renewal of Lenny's license. A video recording was admitted, establishing people loitering in the parking lot after 3:00 a.m., public urination, an intoxicated woman being carried from Lenny's by two men, and a girl throwing her drink at another man. A remonstrator testified about "a photoshoot out there in the parking lot one night. Dancers coming out of the bar, going out there, . . . and they would take turns posing, pushing their boobs up, showing their ass, stuff like that." (Appellant's Amended App. Vol. IV, p. 87). Empty alcohol containers and condom wrappers were found on the ground on the licensed premises and in neighboring yards.

[7] On February 5, 2016, the hearing officer issued his findings of fact, conclusions of law, and order denying the permit renewal, based on, in pertinent part, "conduct in the parking lot of [Lenny's] which not only may constitute what could be considered a public nuisance, but also threatens the health, peace, and morals of the citizens of the state[.]" (Appellant's Amended App. Vol. III, p. 41). The Commission adopted the findings on April 19, 2016. That same day, the excise police served a revocation order, but this court issued a stay of the revocation. On April 19, 2016, Moe filed a petition for judicial review with the trial court. On December 29, 2016, the trial court affirmed the Commission's decision, concluding, in relevant part, that 905 Ind. Administrative Code 1-27-2 properly defined what constitutes a public nuisance: a licensed premises becomes a public nuisance when "conduct prohibited by the Indiana Penal Code takes place." (Appellee's App. Vol. II, p. 105). Finding that the evidence in the record provided substantial evidence that violations of the Indiana criminal code occurred at Lenny's and that the Commission's decision was not arbitrary or capricious, the trial court affirmed the denial of Moe's permit renewal application.

[8] Moe now appeals. Additional facts will be provided as necessary.

# DISCUSSION AND DECISION

## I. *Standard of Review*

[9] While the legislature has granted courts the power to review the action of state government agencies taken pursuant to the Administrative Orders and

Procedures Act, this power of review is limited. *Ind. Alcohol and Tobacco Com'n v. Lebamoff Enterprises, Inc.*, 27 N.E.3d 802, 806 (Ind. Ct. App. 2015). A court may only set aside agency action that is:

> (1) Arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law;

> (2) Contrary to constitutional right, power, privilege, or immunity;

> (3) In excess of statutory jurisdiction, authority, or limitations, or short of statutory right;

> (4) Without observance of procedure required by law; or

> (5) Unsupported by substantial evidence.

*See* I.C. § 4-21.5-5-14(d). An arbitrary and capricious decision is one which is "patently unreasonable and made without consideration of the facts and in total disregard of the circumstances and lacks any basis which might lead a reasonable person to the same conclusion." *Peru City Police Dept. v. Martin*, 994 N.E.2d 1201, 1204 (Ind. Ct. App. 2013), *trans. denied*. "In determining whether an administrative decision is supported by substantial evidence, the trial court must examine the whole record to determine whether the agency's decision lacks a reasonably sound basis of evidentiary support." *Ind. Alcoholic Beverage Comm'n v. River Rd Lounge, Inc.*, 590 N.E.2d 656, 658 (Ind. Ct. App. 1992), *trans. denied*. "The party seeking judicial review bears the burden to

demonstrate that the agency's action is invalid." *Pendleton v. McCarty*, 747 N.E.2d 56, 61 (Ind. Ct. App. 2001), *trans. denied*.

[10] A review of an administrative agency's decision at the trial court level "is not intended to be a trial *de novo*, but rather the court simply analyzes the record as a whole to determine whether the administrative findings are supported by substantial evidence." *Whirlpool Corp. v. Vanderburgh Cnty-City of Evansville Human Relations Comm'n*, 875 N.E.2d 751, 759 (Ind. Ct. App. 2007). A party may appeal a trial court's determination of the propriety of the administrative agency's decision pursuant to the rules governing civil appeals. *See* I.C. § 4-21.5-5-16. "When reviewing an administrative agency's decision, appellate courts stand in the same position as the trial court." *Pendleton*, 747 N.E.2d at 61.

[11] An appellate court "may not substitute [its] judgment on factual matters for that of the agency and are bound by the agency's findings of fact if [the findings] are supported by substantial evidence." *Whirlpool*, 875 N.E.2d at 759. Courts that review administrative determinations, at both the trial and appellate level, review the record in the light most favorable to the administrative proceedings and are prohibited from reweighing the evidence or judging the credibility of witnesses. *Id*. While reviewing courts must accept the agency's findings of fact if supported by substantial evidence, no such deference need be accorded an agency's conclusions of law, as the law is the province of the judiciary. *Id.* However, "[a]n interpretation of a statute by an administrative agency charged with the duty of enforcing the statute is entitled to great weight, unless this

interpretation would be inconsistent with the statute itself." *LTV Steel Co. v. Griffin*, 730 N.E.2d 1251, 1257 (Ind. 2000).

## II. *Analysis*

Moe contends that the Commission's decision to declare Lenny's a public nuisance was arbitrary and capricious, and unsupported by substantial evidence. In reaching its conclusion, the Commission relied on 905 IAC 1-27-2, which states:

> If a licensed premises becomes a public nuisance, or the licensed premises becomes the scene of acts or conduct which are prohibited by the Indiana Penal Code ([I.C. §] 35-41-1-1 et seq.) or by the criminal laws of the United States, the premises shall be subject to the sanctions specified in [I.C. §] 7.1-2-6-1 through [I.C. §] 7.1-2-6-14.

The Commission, as affirmed by the trial court, interpreted

> A 'public nuisance' for purposes of reviewing [Moe's] permit renewal application, can mean a licensed premises (like Lenny's) where conduct prohibited by the Indiana Penal Code takes place. Indeed, the portions of the hearing officer's conclusion of law and order discussing 'public nuisance' and denying [Moe's] application demonstrate the proper application of law. For example, the hearing officer concluded: "In determining whether to renew a permit, the Commission may consider whether the applicant has allowed the premises to become a public nuisance, or the scene of acts prohibited by the Indiana Penal Code." Moreover, the hearing officer recognized "a shared quality between criminal acts and what [the Indiana Administrative Code] refers to as a "public nuisance." The Commission applied

a correct definition of 'public nuisance' when denying [Moe's] permit renewal application.

(Appellee's App. Vol. II, p. 104) (internal references to citations omitted).

[13] Reading a knowledge requirement into the statute and claiming that the "permittee must have some knowledge of the illegal behavior and allowed the illegal behavior to continue," Moe focuses this court's attention on our decision in *Ind. Alcohol Beverage Com'n v. River Road Lounge, Inc.*, 590 N.E.2d 656, 658 (Ind. Ct. App. 1992), *trans denied*. While we agree with Moe's reading of *River Road Lounge*, we hasten to point out that *River Road Lounge*, decided in 1992, was based on an earlier definition of public nuisance under 905 IAC 1-27-2, which stated: "The permittee allows the licensed premises to become a public nuisance or to become the scene of acts or conduct prohibited by the laws of the United States or Indiana." *See id* (citing 905 IAC 1-27-2). On December 2, 2001, the rule was readopted with amendments that struck the phrase, "permittee or applicant for a permit allows." *See* 25 Ind. Reg. 1351 (Jan. 1, 2002). Accordingly, the provision deleted the requirement that "the permittees [] have direct or indirect knowledge" in exchange for acts or conduct that violate Indiana criminal law. *See id*. Therefore, the relevant issue becomes whether there is substantial evidence that there is illicit behavior occurring on Lenny's premises, regardless of whether Moe acquiesced to this behavior. We find there is.

[14] Indiana's criminal code defines recklessness as "a person who recklessly, knowingly, or intentionally performs an act that creates a substantial risk of

bodily injury to another person." I.C. § 35-42-2-2. The record supports evidence that a person fired a weapon in the air at Lenny's parking lot and the back of the neighbor's garage, adjacent to Lenny's parking lot, is riddled with bullet holes. *See Woods v. State*, 768 N.E.2d 1024, 1027-28 (Ind. Ct. App. 2002) (firing several gun shots in a residential area supported a charge for criminal recklessness). Likewise, the evidence establishes several incidences of public nudity, which is defined, in part, as "the showing of the human or female genitals, pubic area, or buttocks." *See* I.C. § 35-45-4-1(d). Remonstrators testified to several instances of men urinating outside Lenny's at different times, and a woman who "drops her drawers" to go to the bathroom. (Appellant's Amended App. Vol. II, p. 168). Furthermore, disorderly conduct, a Class B misdemeanor, is defined as a "person who recklessly, knowingly, or intentionally . . .engages in fighting or in tumultuous conduct." I.C. § 35-45-1-3(a). Testimony establishes that there are assaults in the parking lot, an intoxicated woman was being carried by two men, and a girl threw her drink at another person.

[15] In response to the charges brought by the remonstrators, Moe counters that over the years he has made a serious investment in improving Lenny's and preventing illegal behavior. He emphasized several affirmative steps, including: adding about fifty security cameras, security searches of patrons and employees for drugs and weapons, barring patrons for illegal activity, and reducing operating hours in response to neighborhood concerns. However, these steps were taken shortly after Moe procured Lenny's in 2012 and did not prevent the

illegal behavior documented by the remonstrators in 2015. While we do not doubt Moe's commitment, we also note the testimony of Officer Hoffman who stated that even though Moe's "investment in security and personnel [is] admirable, it is still spilling out into the neighborhood" and is affecting the neighborhood in a "very negative" way. (Appellant's Amended App. Vol. II, pp. 176, 177). Whereas the number of police runs to Lenny's have decreased "dramatically" in 2014, and continued that trend in 2015, the "seriousness of the runs" has not altered. (Appellant's Amended App. Vol. IV, pp. 54, 58). Therefore, viewing the evidence in favor of the Commission's decision, we cannot say that the Commission's conclusion that Lenny's constituted a public nuisance was arbitrary or capricious. *See May v. Dep't of Natural Res.*, 565 N.E.2d 367, 373 (Ind. Ct. App. 1991) ("[O]nly evidence supporting the agency's stated reasons can be considered, as those are the grounds on which the decision was made"). Therefore, we affirm the Commission's denial of Moe's request for permit renewal.

# CONCLUSION

Based on the foregoing, we conclude that substantial evidence supported the Commission's decision to deny Moe's license because the licensed premises had become a public nuisance.

Affirmed.

Baker, J. and Brown, J. concur