

IN THE

# Court of Appeals of Indiana

Indiana Department of Child Services,

*Appellant-Respondent*



FILED

Feb 04 2025, 9:02 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

v.

K.S.,

*Appellee-Petitioner*

---

February 4, 2025

Court of Appeals Case No.
24A-MI-2129

Appeal from the Marion Superior Court

The Honorable Patrick J. Dietrick, Judge

Trial Court Cause No.
49D12-2310-MI-40983

---

**Opinion by Judge Bradford**

Judges Pyle and Kenworthy concur.

**Bradford, Judge.**

# Case Summary

[1]    In November of 2022, the Indiana Department of Child Services ("DCS") received a report alleging that seventeen-year-old K.S. had sexually assaulted his sixteen-year-old classmate, D.F. DCS substantiated the allegation of sexual abuse, and, upon review, affirmed the substantiation. On K.S.'s request, an administrative appeal hearing was held in July of 2023, and in August of 2023, the Administrative Law Judge ("ALJ") recommended that the substantiation be upheld. In September of 2023, the Final Agency Authority ("FAA") affirmed the substantiation. K.S. sought judicial review, and the trial court vacated DCS's substantiation of sexual abuse against K.S. DCS contends that the trial court abused its discretion in reversing DCS's final determination. Because we agree, we reverse the trial court's decision and remand with instructions to affirm the FAA's decision to uphold the substantiation.

# Facts and Procedural History

[2]    On November 21, 2022, DCS received a report alleging that seventeen-year-old K.S. had sexually assaulted his sixteen-year-old classmate, D.F. On November 23, 2022, DCS Family Case Manager ("FCM") Katrice Hardin met with D.F. for an assessment based on the allegations reported. FCM Hardin described

D.F. to appear "sad, embarrassed. The way she was at the beginning of the interview wasn't the way she was after she talked about the incident." Appellant's App. Vol. III p. 105. D.F. reported to FCM Hardin that, "two months prior," to the interview, she had been raped by K.S. Appellant's App. Vol. III p. 106. D.F. told FCM Hardin that she had been on a camping trip at a state park with K.S., his sister, his female cousin, and three others, during a break from school. According to FCM Hardin, D.F. reported that the person who D.F. had been sharing a tent with had apparently left the tent in the middle of the night, at which point K.S. had come in, and D.F. "said she woke up to him touching and rubbing on her. She kept asking him to stop, telling him no. She said he kept going. She said he pulled down her pants, starting rubbing her vagina, rubbed – pulled down her panties, and then he raped her." Appellant's App. Vol. III p. 107. DCS substantiated the allegation of sexual abuse on February 1, 2023, noting that DCS "ha[d] received multiple assessments naming [K.S.] as the perpetrator of sex abuse." Appellant's App. Vol. II p. 232.

[3]     K.S. requested review of DCS's determination, and on March 8, 2023, DCS affirmed its decision. On July 25, 2023, an administrative appeal hearing was held at K.S.'s request by the ALJ. D.F. testified that she and K.S. had been picked up by his mother and that she, K.S., and K.S.'s mother had "hung out for a little bit" before K.S.'s mother had taken D.F. and K.S. to the camp site. Appellant's App. Vol. III p. 42. D.F. also testified that they had gone camping at Garfield Park, not a state park, and that there had been approximately nine

persons camping in their group. D.F. did not recall initially telling DCS that K.S.'s sister, cousin, and three others had been present.

[4] Regarding the alleged assault, D.F. testified that "K.S. came into my tent that night[,]" and "I woke up, and my clothes were off, and I look up, and it's K.S. on top of me." Appellant's App. Vol. III p. 46. She testified that "his penis was in my vagina" and that she was "trying to hit him, tried to kick him. I was trying to scream." Appellant's App. Vol. III p. 47. D.F. testified that K.S. had held her hands together above her head. D.F. testified that he had put his hand over her mouth and told her to "[s]top talking." Appellant's App. Vol. III p. 47. When K.S. left, he had said, "Don't tell anyone about this. If you do, I'll hurt you." Appellant's App. Vol. III p. 48. D.F. also testified that K.S. had later attempted to speak to her at school on occasion, and "three or four" times, had attempted to say that he was "sorry" to her. Appellant's App. Vol. III p. 49. D.F. did not recall telling the DCS caseworker that she had awoken when K.S. came in and that he had "pulled [her] pants down and started rubbing on [her] vagina." Appellant's App. Vol. III p. 77.

[5] K.S. testified on his own behalf and denied ever having gone on a camping trip with D.F. or touching her inappropriately. K.S.'s sisters both testified that they had never gone camping at Garfield Park with K.S., and K.S.'s father testified that he would not have permitted K.S. to go camping at Garfield Park because it was dangerous.

[6] K.S.'s mother also testified that K.S. had been diagnosed with Attention-Deficit/Hyperactivity Disorder ("ADHD"), autism, depression, anxiety, a deformity of the rib cage, and radial tunnel syndrome. K.S.'s mother further testified that she had never allowed K.S. to go camping with D.F., she had not picked them up from marching band practice to take them to Garfield Park, K.S. had never been to Garfield Park, and she had never picked K.S. and D.F. up from anywhere to play basketball or go swimming. K.S.'s mother testified that she had never allowed K.S. or any of K.S.'s siblings to go camping with D.F. and that K.S.'s cousins do not live in Indiana.

[7] On August 22, 2023, the ALJ recommended that the substantiation be upheld. The ALJ concluded that "DCS presented compelling credible evidence that when [D.F.] was sixteen (16) years old [K.S.] sexually abused her by penetrating her vagina with his penis. [K.S.] disregarded [D.F.]'s attempts to physically and verbally refuse sexual intercourse[.]" Appellant's App. Vol. II p. 57. On September 19, 2023, the FAA affirmed the substantiation. Specifically, the FAA, adopting the ALJ's findings with modifications, made the following findings of fact:

> 3. [K.S.] has prior DCS history naming him as an alleged perpetrator of sex abuse in three other assessments, which were all unsubstantiated due to the lack of the preponderance of evidence. The ALJ did not ascribe much weight to [K.S.'s] prior history with DCS. This FAA must respectfully disagree to some extent. While prior accusations can never prove a current accusation in and of themselves, the fact that three other, completely unrelated persons, have accused a person of a similar act, all within a little over one year, cannot be ignored (and of

course, the ALJ did not ignore this evidence.) In one of those three prior incidents, [K.S.] has been Alleged to be a Juvenile Delinquent for an act that would be Child Molesting. This, this FAA does ascribe some weight to the prior accusations as they do corroborate [D.F.]'s allegations to some extent. See DCS Exhibits B, C, testimony of [K.S.] and FCM Hardin.

* * * *

7. [K.S.] asked [D.F.] to join him at an overnight camping trip outside the school. [D.F.] agreed to go on the camping trip after receiving permission from her parents. See testimony of [D.F.] and Appellant's Exhibit 7.

8. Sometime on a Saturday in the late summer or early fall of 2022, [K.S.]'s mother drove both [K.S.] and [D.F.] to a camping site at a park in the State of Indiana. See testimony of FCM Hardin, [D.F.] and Appellant's Exhibit 7.

9. [D.F.] shared a tent with another girl at the camp site.[] The girl left the tent in the middle of the night. [K.S.] then came into the tent, unzipped [D.F.]'s sleeping bag, and took off [D.F.]'s clothes. [K.S.] put his hand over [D.F.]'s mouth to prevent her from making noise and proceeded to penetrate her vagina with his penis. [K.S.] held both of [D.F.]'s hands over her head with his other hand to control her body. [D.F.] resisted [K.S.]'s actions by kicking, hitting, and trying to scream. [D.F.] also told [K.S.] to stop but he continued to have sexual intercourse with her. Before [K.S.] left the tent, he threatened to hurt [D.F.] if she told anyone about the incident. A member of [K.S.]'s family drove [D.F.] and [K.S.] from the park and returned them home the next day, Sunday morning. See testimony of [D.F.] and Appellant's Exhibit 7.

10. [D.F.] did not immediately report the sex abuse by [K.S.] due to her fear of him. See testimony of [D.F.] and Appellant's Exhibit 7.

11. In the time following the sex abuse incident, [K.S.] tried to approach [D.F.] on a few occasions at school to apologize for his actions at the camp site. See testimony of [D.F.] and Appellant's Exhibit 7.

12. In November 2022, [D.F.] reported the sex abuse incident to the winter percussion director after she found out that [K.S.] would be involved in the same afterschool activity (winter percussion) with her. See testimony of [D.F.] and Appellant's Exhibit 7.

13. The ALJ found [D.F.]'s statements during her testimony to be credible. [D.F.]'s body language and sadness in relating the incident involving [K.S.] all strongly indicate credibility. [D.F.] appeared embarrassed, sad, tearful, and anxious to the extent she kept poking her fingers with a paper clip when relating the incident of sexual abuse. The ALJ further did not find [K.S.] and [K.S.]'s family's testimony to be credible or compelling. [K.S.]'s family's testimony was biased and motivated by the desire to defend [K.S.] in this matter. This FAA fully concurs with this Finding. See testimony of [D.F.], Mother, Father, A.S. and O.S.

Appellant's App. Vol. II pp. 43–45. The FAA adopted the ALJ's conclusions of law and explained that the ALJ had not found K.S.'s argument that D.F. had lacked credibility to be persuasive, and rather that

> [p]eople who have suffered extreme trauma tend to recall the event in one of two, opposite ways. Some people remember minute details, to a degree that opens them up to a suspicion of simply making up details. Some, like D.F. remember the core, traumatic event, vividly, but with "tunnel vision" where all peripheral details are lost, which opens them up to suspicion of dishonesty for not remembering details of an event as one normally does for memorable, but not traumatic, events.

[D.F.]'s recollection is not uncommon in this regard. She can not remember the color of vehicles, the names of people she didn't know, who drove what car, how long she sat on a bench before other's arrived, what she brought to eat and drink that day, and other such trivial details. It is also likely that she was incorrect about the date of the rape and exactly what park or camping side the rape occurred. Those too, are not the kind of details that a traumatized person's brain may consider so critical as to implant in her long-term memory. It is also a fair and legitimate practice to depose a person, ask for every conceivable detail and then impeach the witness at a subsequent hearing when their memory changes regarding those details. Nonetheless, that is not always particularly persuasive. Considering all the factors, this FAA is firmly convinced that [D.F.] was credible, compelling, and persuasive.

Appellant's App. Vol. II p. 47. Moreover, the FAA found that "there is no known motive for [D.F.] to simply lie on such a serious matter[.]" Appellant's App. Vol. II p. 47.

[8] On October 19, 2023, K.S. petitioned for judicial review. On August 1, 2024, the trial court issued its written findings of fact and conclusions of law, vacating DCS's substantiation of sexual abuse against K.S. as being "unsupported by substantial evidence." Appellant's App. Vol. III p. 221. Specifically, the trial court disagreed with the FAA's finding that trauma may have affected D.F.'s memory of the events, writing that

[t]he FAA is incorrect in this characterization of D.F.'s testimony, as D.F. did not remember the 'core, traumatic event, vividly' as evidenced by her multiple and varying version of the events about the alleged sexual assault itself. Every single

portion of D.F.'s story about the alleged sexual assault changed multiple times during the course of these proceedings, including how the alleged rape, or "core, traumatic event," as the FAA refers to it, occurred.

9. Additionally, D.F. made several statements during her testimony that were susceptible to verification by objective, independent evidence, providing the FAA with additional evidence that such authorities are often not fortunate enough to have in these matters. However, when such witnesses or evidence was presented by K.S., because DCS made no effort to provide such evidence itself, D.F.'s claims were not supported in any manner and actually became more unbelievable as her version of events continued to change throughout this proceeding.

Appellant's App. Vol. III pp. 219–20. The trial court wrote that the ALJ and FAA had "ignored every single piece of evidence apart from D.F.'s testimony during the hearing in making their determination to uphold the substantiation" and "[e]ven then, they only relied on a very small portion of D.F.'s testimony as the FAA acknowledged that all of the surrounding details about the alleged rape did not appear to be credible." Appellant's App. Vol. III p. 220. Ultimately, the trial court vacated the FAA's decision and concluded that the substantiation of abuse was not supported by competent evidence, the FAA was "arbitrary, capricious, an abuse of discretion and unsupported by substantial evidence." Appellant's App. Vol. III p. 221. The trial court remanded the case to DCS to find that the report of child abuse against K.S. is unsubstantiated and to expunge the report from the Child Protection Index.

# Discussion and Decision

DCS contends that the trial court abused its discretion when it reversed the decision to substantiate the allegation of sexual abuse against K.S.

## I.   Standard of Review

"While the legislature has granted courts the power to review the action of state government agencies taken pursuant to the Administrative Orders and Procedures Act [(the "AOPA")], this power of review is limited." *255 Morris, LLC v. Ind. Alcohol and Tobacco Comm'n*, 93 N.E.3d 1149, 1152–53 (Ind. Ct. App. 2018) (citing *Ind. Alcohol and Tobacco Comm'n v. Lebamoff Enters., Inc.*, 27 N.E.3d 802, 806 (Ind. Ct. App. 2015)).  A trial court may only set aside agency action that is:

> (1) arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law;
> (2) contrary to constitutional right, power, privilege, or immunity;
> (3) in excess of statutory jurisdiction, authority, or limitations, or short of statutory right;
> (4) without observance of procedure required by law; or
> (5) unsupported by substantial evidence.

Ind. Code § 4-21.5-5-14(d) (2023).[1]  An arbitrary and capricious decision is one which is "'patently unreasonable and made without consideration of the facts

---

[1] Indiana Code section 4-21.5-5-14 was amended, effective July 1, 2024, to allow the trial court to grant relief if the agency action is "unsupported by a preponderance of the evidence" rather than "unsupported by substantial evidence."  *Compare* Ind. Code § 4-21.5-5-14(d)(5) (2023) *with* Ind. Code § 4-21.5-5-14(d)(5)

and in total disregard of the circumstances and lacks any basis which might lead a reasonable person to the same conclusion.'" *255 Morris*, 93 N.E.3d at 1153 (quoting *Peru City Police Dept. v. Martin*, 994 N.E.2d 1201, 1204 (Ind. Ct. App. 2013), *trans. denied*). "The party seeking judicial review bears the burden to demonstrate that the agency's action is invalid." *Pendleton v. McCarty*, 747 N.E.2d 56, 61 (Ind. Ct. App. 2001) (citing Ind. Code § 4-21.5-5-14(a)), *trans. denied*.

[11] Furthermore, review of an administrative agency's decision at the trial court level "'is not intended to be a trial *de novo*, but rather the court simply analyzes the record as a whole to determine whether the administrative findings are supported by substantial evidence.'" *255 Morris*, 93 N.E.3d at 1153 (quoting *Whirlpool Corp. v. Vanderburgh Cnty.–City of Evansville Human Relations Comm'n*, 875 N.E.2d 751, 759 (Ind. Ct. App. 2007). "A party may appeal a trial court's determination of the propriety of the administrative agency's decision pursuant to the rules governing civil appeals." *Id.* "'When reviewing an administrative agency's decision, appellate courts stand in the same position as the trial court.'" *Id.* (quoting *Pendleton*, 747 N.E.2d at 61).

[12] An appellate court may not substitute [its] judgment on factual matters for that of the agency and are bound by the agency's findings of fact if [the findings] are supported by substantial evidence. Courts that review administrative determinations, at

(2024). Because judicial review was pending on June 30, 2024, we apply the previous version of the statute to the issues of this case.

both the trial and appellate level, review the record in the light most favorable to the administrative proceedings and are prohibited from reweighing the evidence or judging the credibility of witnesses. While reviewing courts must accept the agency's findings of fact if supported by substantial evidence, no such deference need be accorded an agency's conclusions of law, as the law is the province of the judiciary. However, [a]n interpretation of a statute by an administrative agency charged with the duty of enforcing the statute is entitled to great weight, unless this interpretation would be inconsistent with the statute itself.

*Id.* (brackets in original, internal citations and quotations omitted).

## II.  Analysis

[13]   DCS contends that the trial court failed to comply with the standard of review established by the AOPA by substituting its own judgment for that of the agency and reevaluating witness credibility. We agree. The trial court disregarded the agency's finding of fact that D.F. was a credible witness and, on review, found that D.F.'s testimony was "ever changing," "varying," and that "[e]very single portion of D.F.'s story about the alleged sexual assault changed multiple times during the course of these proceedings." Appellant's App. Vol. III pp. 219–20. The trial court added that D.F.'s claims "actually became more unbelievable as her version of events continued to change throughout this proceeding." Appellant's App. Vol. III p. 220. The trial court abused its discretion in so doing.

[14]   With regard to the credibility of the witnesses, the ALJ and the FAA specifically found the following after hearing the evidence presented:

The ALJ found [D.F.]'s statements during her testimony to be credible. [D.F.'s] body language and sadness in relating the incident involving [K.S.] all strongly indicate credibility. [D.F.] appeared embarrassed, sad, tearful, and anxious to the extent she kept poking her fingers with a paper clip when relating the incident of sexual abuse. The ALJ further did not find [K.S.] and [K.S.]'s family's testimony to be credible or compelling. [K.S.]'s family's testimony was biased and motivated by the desire to defend [K.S.] in this matter. This FAA fully concurs with this Finding. See testimony of [D.F.], Mother, Father, [A.S.] and [O.S].

Appellant's App. Vol. II p. 45. Review of the record indicates that the ALJ's and FAA's credibility determinations were supported by substantial evidence.

[15] While D.F.'s testimony contained some inconsistencies, and she was unable to recall marginal details, such as the precise date on which the sexual abuse had occurred, the color or make of K.S.'s mother's car, or the names of the other campers, her testimony regarding the sexual abuse was consistent: she testified that she had gone camping with K.S. and others on a day that she had been at school (for either marching band practice or tutoring), she had awoken in her tent to the feeling of K.S. on top of her, her clothing had been removed, K.S. had penetrated her vagina with his penis, and she had tried to resist, and K.S. had put his hand over her mouth. Again, courts that review administrative determinations "are prohibited from reweighing the evidence or judging the credibility of witnesses." *255 Morris*, 93 N.E.3d at 1153. The ALJ had heard D.F.'s, K.S.'s, and his family's testimony and cross-examination of D.F., which had highlighted the inconsistencies in her statements, and had still chosen to

credit D.F.'s testimony and discredit K.S. and his family's testimony as biased. By disregarding the agency's explicit credibility determinations, the trial court reevaluated the credibility of the witnesses, which it cannot do.[2]

[16] DCS also contends that the trial court abused its discretion in failing to review the record in the light most favorable to DCS's decision and impermissibly reweighing the evidence. The trial court found that the FAA's decision was "unsupported by substantial evidence." Appellant's App. Vol. III p. 221. "Substantial evidence means more than a scintilla; that is, reasonable minds might accept it as adequate to support the conclusion. It need not reach the level of preponderance." *Brookston Res., Inc. v. Dept. of Nat. Res.*, 243 N.E.3d 1127, 1144 (Ind. Ct. App. 2024) (internal citation and quotations omitted).

[17] Under Indiana Code section 31-33-26-9(b), DCS was required to prove "by a preponderance of credible evidence" that K.S. was "responsible for the child's abuse or neglect." Specifically, for this case, DCS was required to prove that, before D.F. became eighteen years old, K.S. was the perpetrator, and D.F. the victim, of rape as defined in Indiana Code § 35-42-4-1. *See* Ind. Code §§ 31-9-2-

---

[2] With regard to the trial court's concern with the lack of evidence to support the ALJ's conclusion that trauma may affect a victim's memory, we note that we have previously observed that struggling to remember certain details is not uncommon in sexual abuse cases involving minors. *See Barger v. State*, 587 N.E.2d 1304, 1307 (Ind. 1992) ("It is difficult for children to remember specific dates, particularly when the incident is not immediately reported…. The exact date becomes important only in limited circumstances, including the case where the victim's age at the time of the offense falls at or near the dividing line between classes of felonies.").

14; 31-34-1-3(a)(1)(A). Indiana Code section 35-42-4-1(a) defines rape as an act by

> a person who knowingly or intentionally has sexual intercourse with another person or knowingly or intentionally causes another person to perform or submit to other sexual conduct (as defined in IC 35-31.5-2-221.5) when:
>
>> (1) the other person is compelled by force or imminent threat of force;
>> (2) the other person is unaware that the sexual intercourse or other sexual conduct (as defined in IC 35-31.5-2-221.5) is occurring;
>> (3) the other person is so mentally disabled or deficient that consent to sexual intercourse or other sexual conduct (as defined in IC 35-31.5-2-221.5) cannot be given; or
>> (4) the person disregarded the other person's attempts to physically, verbally, or by other visible conduct refuse the person's acts[.]

[18] In this case, D.F. testified that, on the night of her camping trip with K.S., while she had been sixteen years old, she had awoken to the feeling of K.S. on top of her, her clothing had been removed, K.S. had penetrated her vagina with his penis, she had tried to resist, and K.S. had put his hand over her mouth. D.F. testified that K.S. had told her to "stop talking" and when he finally left the tent, he had said, "Don't tell anyone about this. If you do, I'll hurt you." Appellant's App. Vol. III p. 47–48. Considering this evidence and the FAA's credibility determinations, we conclude that DCS presented substantial

evidence to support its decision to substantiate the allegation of sexual abuse against K.S.[3]

[19] We reverse the judgment of the trial court and remand with instructions to affirm the FAA's decision to uphold the substantiation.

Pyle, J., and Kenworthy, J., concur.

ATTORNEYS FOR APPELLANT

Theodore E. Rokita
Indiana Attorney General

Courtney Staton
Deputy Attorney General
Indianapolis, Indiana

ATTORNEY FOR APPELLEE

Bryan L. Ciyou
Ciyou & Associates, P.C.
Indianapolis, Indiana

---

[3] With regard to the trial court's conclusion that the FAA's decision was arbitrary and capricious, and viewing the record "in the light most favorable to the administrative proceedings," we cannot say that the ALJ's and FAA's decision was "'patently unreasonable and made without consideration of the facts and in total disregard of the circumstances and lacks any basis which might lead a reasonable person to the same conclusion.'" *255 Morris*, 93 N.E.3d at 1153 (quoting *Martin*, 994 N.E.2d at 1204).