## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED

May 10 2019, 9:14 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEYS FOR APPELLANT

Mary Jane Lapointe
Daniel Lapointe Kent
Lapointe Law Firm, P.C.
Indianapolis, Indiana

ATTORNEYS FOR APPELLEE

Curtis T. Hill, Jr.
Attorney General of Indiana

Winston Lin
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

Suzanne E. Esserman,

*Appellant-Plaintiff,*

v.

Indiana Department of
Environmental Management,

*Appellee-Defendant.*

May 10, 2019

Court of Appeals Case No.
18A-PL-2375

Appeal from the Marion Superior
Court

The Honorable P.J. Dietrick,
Judge

Trial Court Cause No.
49D12-1609-PL-31303

**Robb, Judge.**

# Case Summary and Issues

[1] Suzanne Esserman appealed her termination from the Indiana Department of Environmental Management ("IDEM") to the State Employees' Appeals Commission ("SEAC"). The SEAC granted partial summary judgment in favor of IDEM before issuing a final order on Esserman's remaining claims. Esserman filed a petition for judicial review of the agency action and, after a hearing, the trial court denied Esserman's petition and affirmed the SEAC's order. Esserman now presents three issues for our review, which we consolidate and restate as: (1) whether the trial court erred in affirming the SEAC's grant of partial summary judgment on Esserman's claim that she could be personally liable for refusing to break a law; and (2) whether the trial court erred in concluding the SEAC's decision was supported by substantial evidence. Concluding the trial court erred in affirming the SEAC's grant of partial summary judgment but the trial court did not err in concluding the SEAC's decision on her remaining claims was supported by substantial evidence, we reverse in part, affirm in part, and remand.

# Facts and Procedural History

[2] Esserman was employed by IDEM for nearly twenty-five years before she was terminated on January 17, 2014. She then appealed her termination to the SEAC on March 10, 2014, alleging she was terminated for reasons in violation of public policy, including: (1) objecting to the misuse of State funds in violation of Indiana Code section 5-11-5.5-8 and Indiana Code section 4-15-10-

4; (2) refusing to break the law for which she could be personally liable, i.e., Indiana Code section 5-11-5.5-2 and well as other Indiana statutes and common law prohibiting fraud, theft, and deception; (3) objecting to a sexually hostile work environment in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e-(3)(a); and (4) objecting to IDEM's failure to accommodate her disabilities in violation of State policy on disabilities and the Americans with Disabilities Act ("ADA"), 29 U.S.C §§ 12112, 12203. *See* Appellant's Appendix, Volume II at 62-63.

[3]     IDEM moved for partial summary judgment in regard to Esserman's first two claims on June 29, 2015.[1]  In support of its motion, IDEM designated:  (1) Esserman's civil service employee complaint along with five letters sent by Esserman's counsel to various IDEM individuals and entities incorporated as exhibits; (2) Esserman's termination letter; and, (3) a copy of an order in *Meeks v. INDOT*, SEAC No. 12-13-106 (Jan. 21, 2014).  *See* Appellant's App., Vol. III at 62.  The administrative law judge ("ALJ") granted IDEM's motion on September 15, 2015.[2]

---

[1] The record clearly indicates that Esserman filed a response to IDEM's motion for summary judgment but Esserman's response is not included in the Appellant's or Appellee's Appendices.  *See, e.g.,* Appellant's App., Vol. II at 49, 58.  It does not appear, however, that Esserman designated any evidence in response.

[2] Following the ALJ's grant of summary judgment on these issues in favor of IDEM, Esserman filed a complaint against IDEM in state court, alleging unlawful retaliatory termination in violation of the IFCA. IDEM successfully moved to dismiss the complaint on the basis of sovereign immunity and our supreme court affirmed the trial court on transfer.  *See Esserman v. Ind. Dep't of Envtl. Mgmt.*, 84 N.E.3d 1185, 1193 (Ind. 2017).

[4] An administrative hearing was conducted on January 27 and 28, 2016. There, the ALJ limited evidence to Esserman's remaining claims and, after hearing evidence, issued a non-final order concluding:

> [IDEM's] termination of [Esserman] did not violate public policy. [Esserman] has failed to sustain her burden of proving that a public policy exception to the employment at-will doctrine existed regarding her termination by [IDEM].

Appellant's App., Vol. II at 47, ¶ 44. Esserman objected to the ALJ's determination on May 5, 2016 and a hearing was conducted before the SEAC on August 9. The SEAC issued a final order incorporating portions of the non-final order on August 23. Esserman then filed a petition for judicial review on September 1, and the trial court heard argument on July 10, 2018. The trial court then issued an order granting summary judgment in favor of IDEM on September 4, 2018. The trial court's findings of fact and conclusions of law provided:

> I. Findings of Fact
>
> * * *
>
> 6. From 2009 until [Esserman's] termination in 2014, [Esserman] received "Does Not Meet Expectations" in performance ratings.
>
> 7. In May 2011, [Esserman] filed a sexual harassment complaint against two coworkers. At that time, [Esserman] worked in the Finance and Operations Section of OLQ. After filing the complaint, [Esserman] went on Family Medical Leave ("FML")

for six months in June 2011 during which time the Indiana State Personnel Department ("SDP") investigated the complaint.

8. SDP ultimately concluded the sexual harassment complaint had no merit. [Esserman's] claims include an allegation that she was fired due to filing that complaint.

9. After [Esserman] returned from FML in December 2011, her then supervisor recommended that [Esserman] be terminated due to poor performance reviews, but [Esserman] was instead transferred to a different section, ELFT, by the Department's Commissioner where [Esserman] became an SEM1.

10. [Esserman's] new supervisors in ELFT were aware of [Esserman's] past negative performance evaluations.

11. [Esserman's] duties as an SEM1 included reviewing claims for reimbursement from the state for accuracy.

l2. [Esserman] took FML from March 2012-Apri1 2012.

13. On July 30, 2012 [Esserman] was given a written reprimand for behavior at work.

14. [Esserman] was given an Interim Appraisal covering the period of January 1, 2012-October 1, 2012, which rated [Esserman] as "Does Not Meet Expectations."

15. After this Interim Appraisal, [Esserman] was given a Work Improvement Plan ("WIP") by her supervisor designed to focus on three key components of [Esserman's] job. This plan was never completed due to concerns about accommodating [Esserman's] disability and was not used in evaluating [Esserman's] performance.

16. On November 30, 2012, [Esserman] met with SPD to discuss accommodating her disability. [Esserman] informed SPD of her need to frequently use the restroom. SPD instructed the building's cleaning staff to leave extra toilet paper for [Esserman] to use.

17. [Esserman] took FML from January 23, 2013-June 2, 2013. When [Esserman] returned to work, her hours were restricted to twenty hours per week for the first four weeks and thirty hours per week for the next two weeks. [Esserman] was hospitalized on June 25-26, 2013.

18. After a doctor's appointment on July 5, 2013, [Esserman] worked until July 22, 2013 on a reduced schedule after which she returned to a full-time work schedule until she took FML again from August 13, 2013 to October 21, 2013.

19. In 2013, [Esserman's] performance expectations required her to review at least $1.4 million in claims per year with 90% accuracy.

20. In an effort to increase departmental efficiency, all ELTF claims reviewers were instructed to apply "reduced scrutiny" to entities that are known to generally submit good claims.

21. [Esserman] claimed this instruction violated Indiana law and so she refused to comply with the reduced scrutiny instruction. [Esserman] was reassigned to claims to which that instruction did not apply. [Esserman's] objection did not play a role in her termination.

22. [Esserman] claims she was fired in violation of public policy for refusing to apply reduced scrutiny to certain claims.

23. [Esserman], like all employees, had a program on her computer that tracked her progress towards her goal. [Esserman's] supervisor by the end of 2014 was checking [Esserman's] progress every week.

24. [Esserman] was rated as "Does Not Meet Expectations" for her 2013 annual review. [Esserman's] expectations were adjusted to take into account her FML leave and disability accommodations.

25. The Assistant Commissioner of Land Quality recommended [Esserman] be terminated for repeatedly failing to meet expectations.

26. The Commissioner terminated [Esserman] on January 17, 2014.

27. [Esserman] claims this termination violated Ind. Code § 5-11-5.5-8, that she was fired in violation of public policy, that she was fired in retaliation for reporting sexual harassment, that she has a claim for whistleblower retaliation under Ind. Code § 4-15-10-4, and that she was terminated in retaliation for her disability.

II. Conclusions of Law

28. [Esserman] seeks judicial review of the SEAC ALJ'S findings and requests that this Court order the agency to either reinstate [Esserman] or compensate her for lost income.

29. This Court may only remand the decision to the ALJ if his decision is (1) arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law, (2) contrary to constitutional right, power, privilege, or immunity, (3) in excess of statutory jurisdiction, authority, or limitations, or short of

statutory right, or . . . (4) without observance of procedure required by law, or (5) unsupported by substantial evidence pursuant to Ind. Code § 4-21.5-5-14(d). *See Indiana Same Bd. of Health Facility Adm'rs v. Werner*, 841 N.E.2d 1196 (Ind. Ct. App. 2006). Ind. Code § 4-15-2.2-42 explicitly states that proceedings before SEAC are governed by AOPA.

30. The requested relief is unavailable. [Esserman] requests that this Court either reinstate her to her former position or order [IDEM] to compensate [Esserman] financially. However, if a court finds on judicial review that a final agency action is improper, it only has the power to remand the matter back to the agency for further proceedings. Ind. Code § 4-21.5-5-15. The Court of Appeals has "frequently concluded that remand is the appropriate remedy for improper administrative agency action." [*Werner*, 841 N.E.2d at 1209]. A court may not instruct an agency to take any specific action without first having given the agency an opportunity to correct any errors this Court finds. *Indiana Family and Social Services Admin. v. Culley*[,] 769 N.E.2d 680, 684-685 (Ind. Ct. App. 2002) (citations omitted).

31. This Court must afford "due deference" to the agency's decisions because it has "expertise in its given area." *Ballard v. Book Heating & Cooling, Inc.*, 696 N.E.2d 55, 56 (Ind. Ct. App. 1998). An interpretation of statutes and regulations by the administrative agency charged with the duty of enforcing those regulations and statutes is entitled to great weight unless the interpretation would be inconsistent with the law itself. *LTV Steel Co. v. Griffin*, 730 N.E.2d 1251, 1257 (Ind. 2000).

32. A "court must review the record of proceedings in the light most favorable to the administrative proceeding." *Brennan v. Bd. of Zoning Appeals of Evansville and Vanderburgh County*, 695 N.E.2d 983, 985 (Ind. Ct. App. 1998) (citing *John Malone Enterprises, Inc. v. Schaffer*, 674 N.E.2d 599, 605 (Ind. Ct. App. 1996)). A trial

court may not "reweigh the evidence or reassess witness credibility." *Andrianova v. Ind. Family Soc. Servs. Admin*, 799 N.E.2d 5, 7 (Ind. Ct App. 2003).

33.  [Esserman] claims that the ALJ erred by granting [IDEM's] Motion for Partial Summary Judgment with respect to [Esserman's] claims that she was fired for refusing to break the law because the ALJ based his opinion on improperly designated evidence and because the facts support [Esserman's] case. Both claims fail.

34.  The ALJ did not rely on improperly designated evidence in granting summary judgment to the State. The State properly filed a motion for partial summary judgment and the ALJ properly applied the summary judgment standard. Choosing not to designate affidavits, depositions, or other sworn testimony or documents does not change a motion for partial summary judgment into a motion to dismiss.

35.  [Esserman's] claimed disputed material fact, that she could have been personally liable for the crime of fraud, theft, or deception, is not a factual assertion, but merely an unsupported legal conclusion which was properly rejected by the ALJ on the motion for partial summary judgment. All of these crimes require intent. *See Wright v. Pennamped*, 657 N.E.2d 1223, 1230 (Ind. Ct. App. 1995)(intent to deceive required for fraud); Ind. Code § 35-43-4-2(a)(theft requires intent to deprive); Ind. Code § 35-43-5-3(a)(2)-(3)(requiring knowledge or intent for the crime of making a false statement). The ALJ properly found no evidence suggesting [Esserman] would have had the requisite intent or knowledge to be liable for of any of these crimes and so properly denied the claim. Additionally, the ALJ concluded that [Esserman] would not have been personally liable for misuse of state resource [sic], a conclusion that is both reasonable in light of the statutory scheme and within the agency's area of expertise, and so is deserving of this Court's deference.

36. [Esserman] argues the ALJ improperly excluded evidence on illegal activity. This claim also fails. Whether or not there was in fact a violation of the law is not relevant for determining if the whistleblower statute, Ind. Code § 4-15-10-4, applies. That statute only requires that an employee make "a reasonable attempt to ascertain the correctness of any information." The veracity of a whistleblower's report is not relevant in determining whether the whistleblower was illegally terminated in retaliation for making the report, and so evidence concerning any alleged illegal activity in this case is not relevant. [Esserman] claims that she was fired for refusing to do something she thought was illegal. The ALJ reached the opposite conclusion: [Esserman] was not fired for her objection to giving certain documents less scrutiny.

37. [Esserman's] claim that there was a failure to accommodate also fails. The ALJ reviewed the evidence and concluded that her supervisors were telling the truth when they determined that [Esserman's] termination was unrelated to her accommodation. This court may not "reweigh the evidence or reassess witness credibility." [*Andrianova*, 799 N.E.2d at 7]. There is enough evidence to support the ALJ'S conclusion that it cannot be said to be unsupported by substantial evidence, arbitrary, capricious, or contrary to law. [Esserman's] claimed defects, such as claiming the required $1.4 million of reviewed claims was not adjusted for [Esserman's] disability or that the October 2012 WIP were improperly used in [Esserman's] termination, is a request to reweigh the facts and reach the opposite conclusion of the ALJ which this Court may not do.

38. [Esserman] claims that the ALJ's statement that there were problems with both the "quality and quantity" of her work is reversible error. This claim also fails. There is substantial evidence in the record demonstrating problems with the quality of [Esserman's] work, and as such the ALJ's statement cannot be said to be arbitrary. Even if the ALJ is mistaken and this Court

finds that there was not substantial evidence supporting a conclusion that there were issues with the quality of [Esserman's] work, the ALJ's error is harmless. The result would not change if the word "quality" was removed, as the ALJ's written decision makes clear that the primary reason for the termination of [Esserman's] employment involved issues with the quantity of work completed.

39. [Esserman] claims the ALJ failed to address substantial evidence relevant to all of her claims. This claim also fails. The ALJ's decision covers each claim and the relevant facts in detail. The agency further instructed the ALJ to cover other theories of liability as well after the ALJ issued his Non-Final Order[.] This court may not "reweigh the evidence or reassess witness credibility." [*Andrianova,*] 799 N.E.2d at 7. The ALJ addressed substantial evidence relevant to all of [Esserman's] claims and ruled against [Esserman]. [Esserman's] reasoning for why the ALJ's conclusions on the sexual harassment complaint, disability accommodation, and reasons for termination were improper amount to a request that this Court reweigh the evidence and find in [Esserman's] favor. The ALJ's conclusion cannot be said to be unsupported by substantial evidence, arbitrary, capricious, or contrary to law and so the conclusions of the ALJ cannot be disturbed.

Appealed Order at 1-10. Esserman now appeals.

# Discussion and Decision

## I. Standard of Review

Esserman challenges the trial court's order upholding the SEAC's administrative decision. Under the Administrative Orders and Procedures Act

("AOPA"), a court may grant relief only if it determines that a person seeking judicial relief has been prejudiced by an agency action that is:

> (1) arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law; (2) contrary to constitutional right, power, privilege, or immunity; (3) in excess of statutory jurisdiction, authority, or limitations, or short of statutory right; (4) without observance of procedure required by law; or (5) unsupported by substantial evidence.

Ind. Code § 4-21.5-5-14(d).

[6]   The "burden of demonstrating the invalidity of agency action is on the party to the judicial review proceeding asserting invalidity." Ind. Code § 4-21.5-5-14(a). "Our review of agency action is intentionally limited, as we recognize an agency has expertise in its field and the public relies on its authority to govern in that area." *Ind. Alcohol and Tobacco Comm'n v. Spirited Sales, LLC*, 79 N.E.3d 371, 375 (Ind. 2017). Although we "defer to the agency's findings if they are supported by substantial evidence[,]" we review an agency's conclusions of law de novo. *Moriarity v. Ind. Dep't of Nat. Res.*, 113 N.E.3d 614, 619 (Ind. 2019). Moreover, we do not reweigh the evidence; rather, we consider the record in the light most favorable to the agency's decision. *Ind. State Ethics Comm'n v. Sanchez*, 18 N.E.3d 988, 992 (Ind. 2014). We affirm the agency's judgment unless it is clearly erroneous. *Id.*

[7]   Here, IDEM partially disposed of Esserman's claims through summary judgment. Under AOPA, an ALJ considers a motion for summary judgment as a court would under Trial Rule 56(C). Ind. Code § 4-21.5-3-23(b). Summary

judgment is a tool which allows a trial court to dispose of cases where only legal issues exist. *Hughley v. State*, 15 N.E.3d 1000, 1003 (Ind. 2014). The moving party has the initial burden to show the absence of any genuine issue of material fact as to a determinative issue. *Id*. An issue is "genuine" if a trier of fact is required to resolve the truth of the matter, while a fact is "material" if its resolution affects the outcome of the case. *Id*. As opposed to the federal standard which permits the moving party to merely show the party carrying the burden of proof lacks evidence on a necessary element, Indiana law requires the moving party to "affirmatively negate an opponent's claim." *Id*. (quotation omitted). The burden then shifts to the non-moving party to come forward with contrary evidence showing an issue to be determined by the trier of fact. *Id.* We construe all factual inferences in favor of the non-moving party and resolve all doubts as to the existence of a material issue against the moving party. *Manley v. Sherer*, 992 N.E.2d 670, 673 (Ind. 2013). Indeed, summary judgment is appropriate only when "the designated evidentiary matter shows that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Ind. Trial Rule 56(C).

## II. Refusal to Break the Law

Esserman argues the trial court erred in concluding she could not establish a claim that she was discharged for refusing to break the law for which she could be personally liable and by concluding that the SEAC properly dismissed this claim on summary judgment.

Specifically, Esserman alleged in her complaint:

> I am subject to personal liability for misuse of State funds, or conspiracy to misuse State funds under [the Indiana False Claims Act ("IFCA")], as well as under Indiana statutes and common law prohibiting fraud, theft and deception. I therefore could not simply sign-off on claims for dispersal of State funds without reviewing them, when I knew they contained fraudulent charges, and when signing meant I had actually reviewed them. My refusal to do so resulted in the termination of my employment in violation of Indiana public policy.

Appellant's App., Vol. II at 62.

In *McClanahan v. Remington Freight Lines*, our supreme court recognized an exception to the employment at will doctrine when it upheld a wrongful discharge claim for damages by a truck driver who alleged he was fired for refusing to violate Illinois state weight limits. 517 N.E.2d 390, 393 (Ind. 1988). Thus, under common law, an employee cannot be terminated from employment for refusing to break a law for which he or she could be personally liable. *See id.*

## A. IFCA

Esserman claims she was terminated for refusing to the violate the IFCA. Modeled after the federal False Claims Act, 31 U.S.C. §§ 3729-3733, the IFCA applies to fraud committed against the State of Indiana. Ind. Code § 5-11-5.5-2. The IFCA provides, in relevant part:

A person[3] who knowingly or intentionally:

> (1) presents a false claim to the state for payment or approval;

> (2) makes or uses a false record or statement to obtain payment or approval of a false claim from the state;

> * * *

> (7) conspires with another person to perform an act described in subdivisions (1) through (6); or

> (8) causes or induces another person to perform an act described in subdivisions (1) through (6);

is, except as provided in subsection (c), liable to the state for a civil penalty of at least five thousand dollars ($5,000) and for up to three (3) times the amount of damages sustained by the state. In addition, a person who violates this section is liable to the state for the costs of a civil action brought to recover a penalty or damages.

Ind. Code § 5-11-5.5-2(b).

[12] Applied here, Esserman alleges she would have been subject to personal liability under the IFCA if she had signed-off on "claims for dispersal of State funds without reviewing them, when [she] knew they contained fraudulent

---

[3] "Person" is defined to include "a natural person, a corporation, a firm, an association, an organization, a partnership, a limited liability company, a business, or a trust." Ind. Code § 5-11-5.5-1(5).

charges, and when signing meant [she] had actually reviewed them."
Appellant's App., Vol. II at 62. On summary judgment, the ALJ reasoned
Esserman had "failed to assert how she could be personally liable under the
IFCA[,]" because she did not claim that she

> knowingly or intentionally presented a false claim to the state,
> nor does she assert that she gave false information to obtain
> payments from the state. I.C. §§ 5-11-5.5-2(b)(1), (2).
> Additionally, [Esserman's] argument that she might be
> personally liable for conspiring to perform the aforementioned
> actions is misplaced. While [Esserman] "is not required to show
> an express agreement" between herself and those presenting false
> claims, she "must produce more than 'a whiff of the alleged
> conspirators' assent.'" *United Stares ex rel. Durcholz v. FXW Inc.*,
> 189 F.3d 542, 546 (7th Cir. 1999). Simply approving of the
> documentation before her does not rise to the level of presenting
> a false claim or false information for payment, nor does it show
> her tacit agreement with those that were allegedly presenting
> false claims to the ELTF. [Esserman's] bald assertion that she
> could have been liable under the IFCA, without further evidence,
> does not "support the inferential leaps that would be required to
> conclude that" [Esserman] conspired with those presenting false
> claims to the state. *Id*. Thus there is no genuine issue of material
> fact concerning [Esserman's] alleged personal liability under the
> IFCA.

*Id*. at 58-59, ¶ 15, 17. The trial court then affirmed the SEAC's disposal of
Esserman's claims on summary judgment, reasoning:

> the ALJ concluded that [Esserman] would not have been
> personally liable for misuse of state resource [sic], a conclusion
> that is both reasonable in light of the statutory scheme and within
> the agency's area of expertise, and so is deserving of this Court's
> deference.

Appealed Order at 8, ¶ 35.

[13] Notably however, an administrative agency's interpretation of a statute is only entitled to deference when: (1) the administrative agency is charged with the duty of enforcing the statute; and (2) when that interpretation is not inconsistent with the statute itself. *Moriarity*, 113 N.E.3d at 619. Here, as the SEAC itself explained, it is not charged with the duty of enforcing the IFCA:

> the IFCA requires that an employee bring an action under [Indiana Code section 5-11-5.5-8(a)(2)] in "any court with jurisdiction." I.C. § 5-11-5.5-8(c). "SEAC is an executive branch administrative agency, not a court." *Meeks v. Indiana Dept. of Transp.*, Further Procedural Order RE: Amended Complaint, State Emp. App. Comm'n No. 12-13-106 (Jan. 21, 2014). Thus, SEAC is without jurisdiction to hear [Esserman's] claims brought under the IFCA.

Appellant's App., Vol. II at 58, ¶ 14.[4] As the SEAC was not "charged with the duty of enforcing the statute[,]" the trial court's deference to the SEAC's interpretation was therefore misplaced.[5] *Moriarity*, 113 N.E.3d at 619.

---

[4] The SEAC later more succinctly explained:

> The parties are reminded that [the] SEAC is without jurisdiction to hear claims regarding the legitimacy of [Esserman's] assertion that state funds were being misused. [The] SEAC only has the jurisdiction to determine whether [Esserman's] termination was a result of her filing a written report that state funds were being misused.

*Id.* at 60, n.4.

[5] Esserman's claim under the IFCA fell under the purview of the SEAC only by application to her discharge of employment. The SEAC's jurisdictional statute provides that "[a]n employee in the unclassified service

[14]     Even if the SEAC was charged with enforcing the IFCA, however, we would still conclude its interpretation was "inconsistent with the statute itself." *Id.* Once again, the IFCA subjects persons to liability for, inter alia, "knowingly or intentionally" presenting "a false claim to the state for payment or approval[.]" Ind. Code § 5-11-5.5-2(b)(2). The SEAC concluded that "[s]imply approving of the documentation . . . does not rise to the level of presenting a false claim or false information for payment[.]" Appellant's App., Vol. II at 58, ¶ 17. But Esserman's allegation was not simply that she was asked to forgo performing her due diligence. Rather, Esserman alleged that she "knew [the claims] contained fraudulent charges[.]" Appellant's App., Vol. II at 62. The IFCA defines "knowingly" as having actual knowledge of the information, acting in deliberate ignorance of the truth or falsity of the information, or acting in reckless disregard of the truth or falsity of the information. Ind. Code 5-11-5.5-1(4). Therefore, Esserman possessed the requisite mens rea to be personally liable under the statute and the next question becomes whether Esserman's

---

may be dismissed, demoted, disciplined, or transferred for any reason that does not contravene public policy." Ind. Code § 4-15-2.2-24(b). Indiana Code section 4-15-2.2-42(f) further provides:

> An unclassified employee must establish that the [SEAC] has subject matter jurisdiction to hear the employee's wrongful discharge claim by establishing that a public policy exception to the employment at will doctrine was the reason for the employee's discharge. The former employee has the burden of proof on this issue.

And, as our supreme court held in *McClanahan*, "firing an employee for refusing to commit an illegal act for which he would be personally liable is as much a violation of public policy declared by the legislature as firing an employee for filing a workmen's compensation claim." 517 N.E.2d at 393.

approval of a claim would constitute "presenting" a claim under the IFCA.[6] *See* Ind. Code § 5-11-5.5-2(b)(1).

[15] The crux of the SEAC's grant of summary judgment and IDEM's argument on appeal can be summarized as: because Esserman was not the person originally "presenting" a false claim, or benefiting from its payment, she could not be liable under the statute. *See* Appellee's Brief at 27-30; Appellant's App., Vol. II at 58-59, ¶ 15, 17. However, the relevant provision of the IFCA applies to persons who "present[] a false claim to the state for payment *or* approval[.]" Ind. Code § 5-11-5.5-2(b)(1) (emphasis added). Nothing in Indiana Code section 5-11-5.5-2 exempts state employees from personal liability under the statute and, had the legislature so intended, it certainly knew how to do so. Furthermore, nothing in the statute requires the person presenting the claim for payment or approval to be the beneficiary of the claim. In the absence of these two limitations, we are unaware of any reason state employees knowingly or intentionally approving claims with "fraudulent charges[,]" Appellant's App., Vol. II at 62, and then presenting those claims for payment, would not be

---

[6] "*Presents*" is not defined within the IFCA. *See* Ind. Code § 5-11-5.5-1. Undefined words in a statute or ordinance are given their plain, ordinary, and usual meaning. Ind. Code § 1-1-4-1(1) ("Words and phrases shall be taken in their plain, or ordinary and usual, sense.") "In determining the plain and ordinary meaning of a term, courts may use English language dictionaries as well as consider the relationship with other words and phrases." *Flying J., Inc. v. City of New Haven, Bd. of Zoning Appeals*, 855 N.E.2d 1035, 1040 (Ind. Ct. App. 2006), *trans. denied*. In this context, "present" is defined as "to bring, offer, or give, often in a formal or ceremonious way;" or "to hand over or submit, as a bill or a check, for payment[.]" Dictionary.com, https://www.dictionary.com/browse/present (last visited April 3, 2019).

subject to personal liability under the statute.[7]  Accordingly, we believe Esserman sufficiently pleaded a violation of the law for which she could have been subject to personal liability had she not refused to do so.  The SEAC's grant of summary judgment on such an interpretation was therefore clearly erroneous.  *Sanchez*, 18 N.E.3d at 992.

## B. Designated Evidence

[16]  IDEM focused its arguments on summary judgment and appeal on the question of whether Esserman's allegations could have subjected her to personal liability under the IFCA.  Having concluded Esserman's allegations could have subjected her to personal liability but mindful that a grant of summary judgment is sustainable upon any theory supported by the designated evidence, *see Miller v. Danz*, 36 N.E.3d 455, 456 (Ind. 2015), we turn to the question of whether IDEM "affirmatively negate[d]" Esserman's claim on summary judgment, *Hughley*, 15 N.E.3d at 1003.  We conclude that IDEM did not.

[17]  In support of its motion for summary judgment, IDEM designated the following evidence:  (1) Esserman's civil service employee complaint along with five letters sent by Esserman's counsel to various IDEM employees/entities incorporated as exhibits; (2) Esserman's termination letter; and, (3) a copy of the SEAC opinion in *Meeks v. INDOT*, SEAC No. 12-13-106 (Jan. 21, 2014).

---

[7] We note that the IFCA's requisite mens rea, "knowingly or intentionally," serves to shield innocent mistakes within an employee's job duties.  Ind. Code § 5-11-5.5-2(b).

*See* Appellant's App., Vol. III at 62.  Notably, while it appears that Esserman did not designate any evidence in response to IDEM's motion for summary judgment,[8] such an obligation arises only after IDEM first "demonstrate[s] the absence of any genuine issue of fact as to a determinative issue."  *Hughley*, 15 N.E.3d at 1003.

[18]     Although the termination letter set forth a legitimate reason for Esserman's termination, it failed to affirmatively negate Esserman's claim.  Indeed, the very essence of Esserman's claim was that IDEM's proffered explanation for her termination was duplicitous of its true motivation, i.e., that she was terminated for refusing to break the law.  IDEM could have designated evidence in the form of an affidavit, Esserman's employment records, or other evidence that tended to prove Esserman was not terminated for such a reason.  *See Converse v. Elkhart General Hospital, Inc.*, 120 N.E.3d 621, 626 (Ind. Ct. App. 2019).  However, because it failed to do so, "[t]he question of the existence of a retaliatory motive for a discharge is a question for the trier of fact."  *McGarrity v. Berlin Metals, Inc.,* 774 N.E.2d 71, 79 (Ind. Ct. App. 2002), *trans. denied*.  Accordingly, the grant of summary judgment in IDEM's favor was improper.[9]

---

[8] As noted above, *see supra* n.1, the record clearly indicates that Esserman filed a response to IDEM's motion for summary judgment but Esserman's response is not included in the Appellant's or Appellee's Appendices. *See, e.g.,* Appellant's App., Vol. II at 49, 58.

[9] Because we conclude genuine issues of material fact on Esserman's claim of wrongful discharge for refusal to break the law remain regarding the IFCA, we need not address the alternative theories of fraud, theft,

# III.  Substantial Evidence

Esserman also argues the SEAC's decision was not supported by substantial evidence.  Specifically, she contends that substantial evidence demonstrates that her termination was related to her disabilities, request for accommodations, and unrelated to the quality of her work; she was retaliated against for reporting sexual harassment and ghost employment; she was given contradictory instructions and management did not account for her absences; she was terminated for her refusal to "rubber stamp" claims; and her negative 2013 performance appraisal contains mistakes concealed by her supervisor.  Brief of Appellant at 3.

Our standard for reviewing administrative agency decisions is well settled. *Whirlpool Corp. v. Vanderburgh Cty.-City of Evansville Human Relations Comm'n*, 875 N.E.2d 751, 759 (Ind. Ct. App. 2007).  To determine whether an administrative decision is supported by substantial evidence, a trial court must examine the whole record to determine whether the decision "lacks a reasonably sound basis of evidentiary support." *255 Morris, LLC v. Ind. Alcohol & Tobacco Comm'n*, 93 N.E.3d 1149, 1153 (Ind. Ct. App. 2018).

> [This court] may not substitute [its] judgment on factual matters for that of the agency and [is] bound by the agency's findings of fact if [the findings] are supported by substantial evidence.  [We]

---

and/or deception. *See D.H. by A.M.J. v. Whipple*, 103 N.E.3d 1119, 1134 n.4 (Ind. Ct. App. 2018), *trans. denied.*  For the same reason, we also need not address Esserman's argument regarding the exclusion of evidence. *Id.*

review the record in the light most favorable to the administrative proceedings and are prohibited from reweighing the evidence or judging the credibility of witnesses.

*Id*. (quotation omitted).

Substantial evidence is defined as "more than speculation and conjecture yet less than a preponderance of evidence. Substantial evidence means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *State v. Mills*, 76 N.E.3d 861, 870 (Ind. Ct. App. 2017), *trans. denied*. Based on our review of the record, we conclude that the SEAC's decision that Esserman's termination was unrelated to her disabilities, accommodation requests, or sexual harassment complaint was supported by substantial evidence. Therefore, the trial court did not err in this respect.

## A. Disability Claims

Esserman claims she was retaliated against because of her disability and necessary accommodations. In November 2012, Esserman met with the Indiana State Personnel Department ("SPD") to discuss accommodations for her disabilities. At that time, Esserman notified SPD that her disabilities caused her to use the restroom frequently. She was terminated in January 2014.

A prima facie case of disability discrimination in employment is established when a plaintiff proves: (1) he or she is disabled within the meaning of the Americans with Disabilities Act; (2) his or her work performance met the employer's legitimate expectations; (3) an adverse employment action; and (4)

"the circumstances surrounding the discharge indicate it is more likely than not that [the] disability was the reason for discharge." *Powdertech, Inc. v. Joganic*, 776 N.E.2d 1251, 1256 (Ind. Ct. App. 2002). There is no dispute that Esserman meets the first and third elements. However, the ALJ found that her work did not meet IDEM's legitimate expectations and the circumstances of her termination did not point to her disability as the reason for termination. Relevant evidence in the record supports such a conclusion.

[24] The ALJ also concluded that Esserman was not retaliated against because she had a disability or for being accommodated, conclusions also supported by substantial evidence in the record. To prove retaliation, Esserman must demonstrate that (1) she engaged in statutorily protected activity; (2) she suffered a material adverse action; and (3) there is a causal link between the two. *Gaff v. Indiana-Purdue Univ. of Fort Wayne*, 51 N.E.3d 1163, 1166 (Ind. 2016). The ALJ determined that Esserman was terminated due to poor performance rather than her disabilities or accommodations.

[25] Peggy Dorsey, Deputy Assistant Commissioner of IDEM, testified to Esserman's performance issues. Dorsey stated that Esserman was not held responsible for work while she was on family medical leave. Instead, Esserman was responsible for work that was assigned while she was at the agency and Esserman failed to finish work that should have been complete weeks or months before she went on leave. Dorsey explained, "These documents were very delinquent, not just a few days. There weren't tight time frames when

[Esserman] received these documents. She had plenty of time." Appellant's App., Vol. II at 149.

[26] According to Bobbi Steiff, Esserman's supervisor and section chief of ELTF, claims are required to be processed within sixty days pursuant to statute. When Esserman returned to work part-time in June 2013, Steiff told Esserman she had two weeks to complete one week's work given her part-time schedule, but Esserman failed to meet expectations and did not work efficiently. In 2013, a monthly quota of reviewing $1.4 million in claims was implemented for all senior environmental managers, including Esserman. Although the other SEMs were meeting expectations, Esserman was not. Steiff explained that she *did* take into account Esserman's approved leave in Esserman's 2013 performance evaluation, the purported basis for her termination. Specifically, the evaluation was prorated based on the number of hours Esserman worked, including sick and vacation days. *See id*. at 179. In fact, IDEM's policy was to adjust an employee's performance expectations to account for any family medical leave. *Id*. at 199. Although Steiff testified that she erred by including two expectations in the 2013 appraisal that should have been omitted, Esserman's overall rating, namely "does not meet expectations," would not change despite the mistake and she still failed to meet her top priorities.

[27] Bruce Palin, Assistant Commissioner of IDEM, testified that he recommended Esserman's termination for failure to meet performance expectations repeatedly. Similarly, Kent Abernathy, former chief of staff of IDEM, stated that Esserman's performance consistently fell "significantly below" the goals.

*Id.* at 199.  Craig Schroer, the branch chief, also testified that Esserman failed to achieve the quantity measures despite being capable of meeting the monthly goals.  In a meeting, Shroer informed Esserman that the basis for her termination was her inadequate performance and he specifically demonstrated that she was not meeting quotas.  Additionally, he was of the opinion that Esserman was "unwilling to follow the direction of her supervisor as to how to do claim reviews and senior [quality control] reviews."  *Id.* at 164.

[28]  Furthermore, there is no evidence that Esserman was ever denied the accommodations she requested, a fact Esserman admits, and she indicated in her meeting with SPD she did not believe her frequent trips to the restroom impacted her work.  In 2012, Esserman was placed on a Work Improvement Plan ("WIP"); however, the WIP was suspended while her accommodations were being addressed and the WIP was not reinstated.  Despite the accommodations and a prorated evaluation, accounting for Esserman's approved leave, she was unable to meet IDEM's expectations.  Therefore, the evidence in the record supports the ALJ's determination that Esserman's termination was unrelated to her disabilities or accommodations.[10]

---

[10] Although not raised in her brief, the ALJ concluded Esserman's "cat's paw" theory of liability failed, concluding "there was no animus on the part of [IDEM] that affected the decision to terminate [Esserman] and that the decision to terminate was based solely on [Esserman's] inability to perform the work assigned to her."  Appellant's App., Vol. II at 29.  Substantial evidence also supports this conclusion.

## B. Sexual Harassment Complaint

To prove a retaliation claim for reporting sexual harassment, Esserman must demonstrate the following essential elements: (1) she engaged in statutorily protected activity; (2) she suffered a material adverse action; and (3) there is a causal link between the two. *Gaff*, 51 N.E.3d at 1166. There is no dispute that Esserman engaged in protected activity in filing a complaint of sexual harassment and that she ultimately suffered a material adverse employment action, namely termination. However, the ALJ determined that Esserman failed to establish a causal connection between her complaint and termination. Specifically, the ALJ found that the timing in the case did not help to establish a causal link between the complaint and termination.

A causal nexus may be established through direct evidence or through a "convincing mosaic of circumstantial evidence permitting that same inference." *Jajeh v. Cty. of Cook*, 678 F.3d 560, 570 (7th Cir. 2012) (internal quotation omitted). There are three categories of circumstantial evidence under this approach: "(1) suspicious timing, ambiguous statements and other bits and pieces from which an inference of retaliatory intent might be drawn; (2) evidence that similarly situated employees were treated differently; and (3) evidence that the employer offered a pretextual reason for an adverse employment action." *Id.*

With respect to Esserman's sexual harassment claim, IDEM contends the "timeline of this case demonstrates how Esserman's sexual harassment complaint is distant both in time and space from her termination." Appellee's

Br. at 37. However, Esserman maintains that the finding that the "separation in time between the original complaint and the termination negates any causal connection between the two does not comport with the facts." Br. of Appellant at 44.

[32] The evidence in the record reveals that Esserman filed a sexual harassment complaint on May 19, 2011, and was fired over two and one-half years later on January 17, 2014. After filing her complaint, Esserman was on leave for six months during which time SPD investigated Esserman's complaint. On November 30, 2011, SPD concluded its investigation and determined the alleged behavior was not "[i]nappropriate [c]onduct" and Esserman was not sexually harassed. Appellant's App., Vol. II at 231. Although Esserman's supervisor recommended that Esserman be terminated, IDEM Commissioner Easterly believed Esserman could potentially be successful at the agency in another position. As a result, Esserman was not terminated at that time but rather transferred to ELTF. After her transfer, Esserman continued to receive poor performance appraisals in 2011, 2012, and 2013. Even prior to her complaint, Esserman's 2009 performance appraisal indicated her overall performance rating was "needs improvement." Appellee's App., Vol. II at 25. Ultimately, she was terminated in 2014 due to her most recent poor performance in 2013.

[33] In sum, there is substantial evidence in the record to support SEAC's decision that Esserman's termination was unrelated to her disabilities, accommodations, or sexual harassment complaint. The bulk of Esserman's argument amounts to

an invitation for this court to reweigh the evidence, which we will not do. *255 Morris, LLC*, 93 N.E.3d at 1153. The trial court did not err in concluding SEAC's decision was supported by substantial evidence.

# Conclusion

[34] For the reasons set forth above, we conclude the trial court erred in affirming the SEAC's grant of partial summary judgment, but the trial court did not err in concluding the SEAC's decision determining that Esserman's termination was unrelated to her disabilities, accommodations, or sexual harassment complaint was supported by substantial evidence. We therefore reverse in part, affirm in part, and remand to the trial court for further proceedings consistent with this opinion.

[35] Reversed in part, affirmed in part, and remanded.

Riley, J., and Kirsch, J., concur.